**Bruce BEINEKE, Plaintiff-Respondent,**

v.

**TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, a Corporation, and William Cunningham, Defendants-Appellants.**

No. 47655.

Supreme Court of Missouri,

Division No. 1.

Nov. 14, 1960.

Rehearing Denied Dec. 12, 1960.

684

Robert C. Ely, St. Louis, for defendant, Terminal Railroad Ass'n of St. Louis, appellant.

Coleman, Gerhard, Padberg, Montrey, Maloney & Cekovsky, John P. Montrey, Clayton, for appellant, Cunningham.

Albert E. Schoenbeck, St. Louis, for plaintiff-respondent.

WESTHUES, Presiding Judge.

Plaintiff Beineke obtained a judgment for $30,000 against the Terminal Railroad Asso-

ciation of St. Louis, Missouri, and William Cunningham for personal injuries alleged to have been sustained as the result of the defendants' negligence. Both defendants appealed to this court seeking a reversal of the judgement.

Plaintiff was injured while riding in a car driven by defendant Cunningham. The car crashed into a railing at the east end of Eads Bridge which spans the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois. The bridge is a toll bridge owned and operated by the defendant Terminal. The charges of negligence as to the liability of the Terminal were that on the morning of November 23, 1957, at about four o'clock, the time of the collision, the roadway of the bridge was rough, uneven, worn, and covered with frost; that permitting the roadway to be in such condition constituted negligence. The charge of negligence against Cunningham was that he was guilty of wilful and wanton misconduct in the operation of the car. Plaintiff relied on the Illinois Guest Statute, Ill.Rev.Stat.1957, Ch. 95½, Sec. 9–201; S.H. A. Ch. 95½, Sec. 9–201. The laws of Illinois govern Cunningham's liability.

The main point briefed by Cunningham is that the evidence is insufficient to support a finding that he was guilty of wilful and wanton misconduct and therefore the judgment against him should be reversed. Since we have concluded that this point is well taken, we need not consider the other questions briefed by Cunningham.

The defendant Terminal claims that plaintiff failed to make a submissible case against it and therefore the judgment should be reversed. In our opinion, the evidence which we shall review amply supports the verdict against the Terminal. Other points briefed by the Terminal are that the trial court erred in giving instruction No. 1 submitting the question of whether the roadway was covered with frost. The Terminal claims there was no evidence to prove that it had notice of the frost in time to have corrected such a condition. The last point briefed is that the judgment is excessive.

■ The record justifies the following statement of facts: Eads Bridge serves a dual purpose. It has two levels, the lower is used for trains crossing the river and the upper level is for vehicular traffic. The railroad tracks and the roadway approaching the bridge from the east are on the same level or grade. The roadway for vehicular traffic divides as it nears the bridge into two lanes: one to the south, the other to the north of the railroad tracks. From that point to the top level of the bridge, there are two ramps, each 19½ feet wide and 1000 feet long. The ramp to the north of the tracks is for westbound traffic; the other to the south is for eastbound traffic. These ramps rise from the street level to a point above the space used for trains where they turn toward each other and merge into a roadway 38 feet in width over the bridge. The curve or jog near the top of the westbound ramp moves to the south 15 to 19 feet within a distance of 85 feet to the west at which point it swings back to the right.

On the evening of November 22, 1957, the defendant Cunningham, age 24, plaintiff Beineke, age 24 and William Martens, age 26, met at a De Molay meeting in St. Louis. They were over 21 years of age and therefore were no longer members but were called advisors. After the meeting, the three went to a place called the Stardust Room where they had refreshments. Then, the three went to East St. Louis, Illinois, in Cunningham's car to a place called the Playdium where they listened to a "combo." They crossed Eads Bridge at about one-thirty o'clock in the morning of November 23 on their way to East St. Louis. No frost was noticed on the bridge and the roadway and the streets were dry. The weather was clear and cold; the temperature at that time was in the middle twenties. About four o'clock, they started back to St. Louis, Missouri. While driving through the curve or jog near the top of the westbound ramp, the Cunningham car skidded or slid to the south and struck the south railing of the bridge. The evidence was that the streets were dry at the time the boys started on

their journey to St. Louis but that there was frost on the bridge including the surface of the roadway through the curve. At the time in question, there were no speed signs at the ramp. There were such signs on the bridge which read, "Speed Limit 25 M.P.H. No Parking on Bridge." Along the roadway of the ramp, there were two signs indicating a curve in the roadway ahead and below this was the word "Slow." At the bottom of the ramp there was a warning sign for westbound traffic which read, "Warning Bridge Slippery When Wet." The surface of the roadway on the ramp was covered with asphalt.

The evidence was that Cunningham drove his car up the ramp at a speed of from 25 to 35 m. p. h. The occupants of the car testified that when the car was passing through the curve, it began to vibrate and bounce from the rough surface of the roadway; then it skidded or slid southward and crashed into the railing of the bridge. Plaintiff and Martens were thrown from the car. Plaintiff was taken to a hospital in East St. Louis for treatment and from there to Barnes Hospital in St. Louis, Missouri. There is no dispute over the fact that through the curve where the car skidded the surface of the roadway was rough. The evidence was that this roughness had a tendency to cause cars to lose traction and skid. The roadway was flat, that is, not banked or sloped. It was also shown that the surface of the roadway on the ramp and bridge was covered with frost. Defendant Terminal did not dispute the fact that there was frost on the ramp at the time plaintiff was injured. The Terminal's contention was and is that the frost had not been there a sufficient length of time to charge the Terminal with notice.

Plaintiff and Martens testified that they did not notice anything unusual about Cunningham's driving. No one made any complaint during the evening about the manner in which Cunningham was operating the car.

At the close of all the evidence, Cunningham asked the court for a directed verdict in his favor. The trial court refused this request. Cunningham had requested the trial court to direct a verdict in his favor at the close of plaintiff's evidence. The court denied this motion and in the course of his comments made the following statement: "The Court: All concur or is there a dissenting opinion—Barnes against Lackey, [Mo.] 319 SW 2nd. [638] 639—except for that case, I sustain Mr. Montrey's motion. But under that case it's a question; that's that last one. * * *"

This court, in the Barnes case, in a well prepared opinion by Van Osdol, C., reviewed the case law of Illinois as found in cases applying to the Guest Statute of that state. We there considered at length the meaning of the words "wilful and wanton misconduct" as used in the Guest Statute. This court there approved what was said in a case from the Illinois court. Note the following found in 319 S.W.2d loc. cit. 642 (1): " 'One often quoted definition is that set forth in Schneiderman v. Interstate Transit Lines, Inc., 394 Ill. 569, at page 583, 69 N.E.2d 293, at page 300 "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure after knowledge of impending danger to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care." ' " We held that the plaintiff in the Barnes case was entitled to have her case submitted to a jury on the question of whether the defendant was guilty of wilful and wanton misconduct. But note the evidence in that case as stated in the opinion: The defendant had driven a car approaching a curve in the road at 65 m. p. h. while it was raining. Signs along the road informed the driver that the concrete surface of the roadway would end and the surface of the roadway ahead was asphalt; further, that the speed limit was 45 m. p. h. In addition to that, the defendant knew of the condition, having been over-

the road many times. Furthermore, the defendant testified that she was probably driving too fast.

The evidence in the case before us is quite different. Cunningham had been over Eads Bridge a number of times. Let us assume that he knew the speed limit markers on the bridge read 25 m. p. h. There were no speed signs at the ramp. There were signs indicating a curve ahead and a sign reading, "Slow." The roadway was dry, the weather fair. The record contains no evidence that it was dangerous to drive through the curve at 25 to 35 m. p. h. No frost had been noticed and, according to the evidence, there was none except on the ramp and the bridge. Nothing unusual was noticed in the manner Cunningham was driving. We rule that the evidence was insufficient to justify the trial court's submitting the case to a jury as against Cunningham. This ruling is supported by the Barnes case, supra. The Barnes case was considered in Hisle v. Balkcom, Mo.Sup., 328 S.W.2d 20, where this court ruled that conduct to be wilful and wanton "must certainly amount to something more than ordinary negligence." 328 S.W.2d loc. cit. 22(1, 2).

■ In the brief of the Terminal, no point is made that the evidence was insufficient to sustain a finding that the surface of the roadway where the car skidded or slid was rough and uneven and had been in such a condition for a long time. Further, the Terminal does not claim that the evidence did not support a finding that the roughness had a tendency to cause cars to skid or slide. The contention of the Terminal that the evidence was insufficient is directed to the evidence concerning the frost on the roadway. Point II of the brief states the position taken by the Terminal: "Instruction No. 1 submits the alleged liability of defendant Terminal, based upon a submission that the roadway was not reasonably safe for vehicular travel 'by reason of being covered with frost and ice and being slick,' and the instruction submits that

defendant Terminal had notice of such conditions in time to have corrected them. There is no probative evidence from which the jury could find that defendant Terminal had notice of those conditions, and since such notice was a material part of plaintiff's submission, the instruction was erroneous.

"Hart v. Midkiff (Mo.Sup.), 321 S.W.2d 500, l. c. 508."

Instruction No. 1 submitted not only the question of whether there was frost on the roadway but also the question of whether the roadway was rough. The pertinent part of the instruction which submitted these questions of fact is set out: " * * * and if you further find that on said occasion said eastern ramp and said eastern part of said vehicular deck of said toll bridge were not in a reasonably safe condition for vehicular travel thereon by reason of the blacktop or bituminous surfacing on the curve at and near the top of said ramp being rough, uneven and worn, and by reason of being covered with frost and ice and being slick, and that the defendant Terminal Railroad Association of St. Louis knew or by the exercise of ordinary care should have known of said conditions (if you find they so existed) in time thereafter for said defendant by the exercise of ordinary care to have corrected same before the time of the aforesaid occurrence mentioned in evidence, * * *." Note that the submission was in the conjunctive.

There was evidence that the weather conditions existing on the night in question would cause frost to form on the bridge and ramp more quickly than on the streets and roadways; that this was so because the earth under the surface of the streets had a tendency to keep the surface warm. Plaintiff offered evidence by experts. A Mr. Appleman, a meteorologist connected with the Air Force, testified that he had examined the record of the weather conditions of the night in question. It was his opinion that frost would have formed on the ramp and bridge beginning at two

o'clock in the morning. Defendant introduced evidence by an expert, Edward M. Brooks, a professor of Geophysics at St. Louis University and an expert in the field of meteorology, who testified that considering the weather conditions on the night in question it was not possible to form an opinion as to the time frost would begin to form.

We need not determine whether the evidence on this point was sufficient for a submission of the question to a jury. This is for the reason that the submission of the two ultimate facts, that is, the rough condition of the roadway and the existence of frost, was in the conjunctive. Corley v. Kroger Grocery & Baking Co., 355 Mo. 4, 193 S.W.2d 897, loc. cit. 900(8, 9); Wattels v. Marre, Mo.Sup., 303 S.W.2d 9, loc. cit. 15(7), 16(9), 66 A.L.R.2d 433; Cudney v. Braniff Airways, Mo.Sup., 300 S.W.2d 412, loc. cit. 414(1, 2). It is the law that where the negligence of a defendant combines with natural causes to produce an injury, liability follows. Start v. National Newspapers' Ass'n, Mo.App., 253 S.W. 42, loc. cit. 43(2); Whitaker v. Pitcairn, 315 Mo. 848, 174 S.W.2d 163, loc. cit. 168(6, 7); 65 C.J.S. Negligence § 115, pp. 704–706.

The facts proven in this case justified a finding that had it not been for the rough and uneven condition of the surface of the roadway, the car would not have skidded. We rule that the evidence is ample to support the verdict of the jury against the defendant Terminal.

The final point briefed is that the verdict of $30,000 is excessive. The major injuries of plaintiff are total and permanent loss of the sense of smell, sense of aromatic taste, total loss of hearing in his left ear and partial loss of hearing in his right ear. Plaintiff, since he sustained the injuries, suffers with infrequent headaches, and occasional dizziness. The medical evidence was that if plaintiff turns his head quickly dizziness occurs and if this occurs while plaintiff is walking, it causes him to stagger; further, that this condition was brought about by the injury to plaintiff's head. When plaintiff was thrown from the car as it skidded into the guard rail, he struck his head against a steel upright beam. This resulted in a fractured skull and a cerebral concussion causing cerebral spinal fluid to drain from his nose for several weeks. As noted above, plaintiff was 24 years old at the time of his injury.

The Terminal cited the case of Gooch v. Lake, Mo.Sup., 327 S.W.2d 132, loc. cit. 137, as authority to support the contention that the verdict in this case is excessive. Gooch suffered a concussion and a fractured skull and other injuries. However, the result of the injuries suffered by Gooch cannot be compared with those resulting from the injuries sustained by Beineke, the plaintiff in the case before us. In the Gooch case, this court, in reviewing the plaintiff's injuries, said: "In response to a question propounded by his counsel as to whether he was claiming any permanent injury, plaintiff replied, 'Not as of today, I have no permanent injury.' And on cross-examination he stated, 'I have no permanent disability.' The physician who examined him on defendant's behalf reported that during the course of that examination plaintiff volunteered, 'There is nothing wrong with me.' The psychiatrist expressed the opinion at the trial that 'he is all right.' She further testified that if spinal fluid gets out of the ear, 'there has got to be a tear in the lining of the brain, but the body will heal a very severe blow.'" This court reduced the judgment in the Gooch case of $15,000 by a remittitur of $6,500.

In the Terminal brief, it is stated that "Plaintiff's injuries are not disabling." "We do note in this research that the courts, in determining the amounts to be allowed as damages, give considerable weight to any disability which results in a diminution of capacity to work and labor, and in the case at bar no such disability is present."

We agree that courts give considerable weight to any disability which incapacitates an injured person to work and labor. We do not agree that Beineke did not sustain any injury which affects his ability to work. Loss of hearing, even though in only one ear, may be a serious handicap. Furthermore, courts also give considerable weight to any disability which curtails an injured person's social activities, or any injury which causes embarrassment and humiliation or in any way interferes with the enjoyment of a normal life. See Douglas v. Twenter, 364 Mo. 71, 259 S.W.2d 353, loc. cit. 363–366(20, 21).

Considering the injuries of plaintiff in this case, we cannot say that the verdict is grossly excessive.

The judgment is affirmed against the Terminal Railroad Association and reversed as to Cunningham.

All concur.