**PILLSBURY CO., Appellant,**

v.

**CLEAVER–BROOKS DIVISION OF AQUA–CHEM, INC., Appellee.**

No. 80–1223.

United States Court of Appeals, Eighth Circuit.

Submitted March 9, 1981.

Filed April 22, 1981.

Robins, Zelle, Larson & Kaplan, Minneapolis, Minn., James D. Steiner, Minneapolis, Minn., argued, Robert M. Wattson, Minneapolis, Minn., Kenneth M. Moran, Jamestown, N. D., for appellant.

Paul G. Woutat, Grand Forks, N. D., argued, Vaaler, Gillig, Warcup, Woutat, Zimney & Foster, Grand Forks, N. D., for appellee.

Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and ROSS, Circuit Judge.

ROSS, Circuit Judge.

In this products liability action, the Pillsbury Company sought recovery for damages to a steam boiler unit from the unit's manufacturer, Cleaver-Brooks Division of Aqua-Chem, Inc. Pillsbury alleged that a defect in the design of the automatic cutoff devices prevented the boiler from shutting itself off during a low water condition on April 26, 1975, and sought recovery for the damages to the boiler under the theories of negligence, breach of warranty and strict products liability. Following a trial to the court, Judge Paul Benson[1] held that Pillsbury had "failed to prove its case by a preponderance of the evidence."

On appeal, Pillsbury contends that the evidence is insufficient to support the trial court's decision, that the trial court erred in applying the controlling principles of North Dakota law and, finally, that the trial court erred in admitting into evidence the hearsay report of defendant's employee, James Loibel. We disagree on all grounds.

Judge Benson's ultimate conclusion in this case was a factual one regarding Pillsbury's failure to prove that a defect in the design of the low water cutoff mechanism was the *cause* of the damage to the boiler. From our review of the record and the arguments of the parties, written and oral, we cannot conclude that this factual conclusion concerning causation is clearly erroneous. *Automated Controls, Inc. v. MIC Enterprises*, 599 F.2d 288, 289 (8th Cir. 1979). In addition, we find no merit in Pillsbury's contention that Judge Benson's decision is contrary to the controlling principles of North Dakota law. Accordingly, we affirm the decision of the trial court as to these two issues on the basis of Judge Benson's Memorandum of Decision and Order of December 20, 1979.

The third and final issue, which was not addressed in Judge Benson's opinion, requires some discussion here. During the trial, Judge Benson admitted into evidence over the plaintiff's objection the written report of James Loibel, one of the defendant's employees. Loibel reported that he arrived at the plant to inspect the boiler two days after the accident, and that he spoke to Dave Nichols, one of Pillsbury's supervisors. Loibel's report noted that E. J. Penn, the operator of the boiler at the time of the incident, had stated that the burner went off during a low water test, which would indicate that at least one of the cutoff devices had operated properly. Pillsbury argues that this is the only direct evidence which would support the possibility that the cutoff devices functioned properly because Penn testified at trial that the only time the boiler shut down was when he, Penn, had accidentally shut it off.

Pillsbury argues on appeal that it was prejudicial error for the district court to admit this report containing multiple hearsay into evidence at trial. We disagree for two reasons. First, we believe that the statements of Penn and Nichols fall within the category of representative admissions of party opponents under Rule 801(d)(2)(D) of the Federal Rules of Evidence. Unlike the situation in *Cedeck v. Hamiltonian Federal Savings and Loan Ass'n*, 551 F.2d 1136, 1138 (8th Cir. 1977), the statements were

---

1. The Honorable Paul Benson, Chief Judge, United States District Court for the District of North Dakota.

*known* to have been made by employees of the defendant in the scope of their employment relationship and during the existence of that relationship. *Kaiser Aluminum & Chemical v. Illinois Central Gulf Railroad Co.*, 615 F.2d 470, 476 (8th Cir.), *cert. denied*, —— U.S. ——, 101 S.Ct. 249, 66 L.Ed.2d 116 (1980). And although the statements of the two employees appear in Loibel's third party account, we find no basis for excluding the report. Loibel's deposition was read into evidence and he indicated in that testimony that what he had written down about his conversations with Penn and Nichols accurately reflected those conversations. Pillsbury had the opportunity to question Penn, Nichols and Loibel about the report. In addition, we feel that Nichols adopted the contents of the report, pursuant to Rule 801(d)(2)(B) of the Federal Rules of Evidence, by signing each page of the report right after it was made.[2] Under Rule 801(d)(2)(D) of the Federal Rules of Evidence, the statements are not hearsay, and they were properly admitted by Judge Benson as admissions by the defendant's employees.[3]

 Second, we would reach the same conclusion even if we were to conclude that the report was erroneously admitted into evidence. In our view, other evidence in the record lends support to the trial court's conclusion that Pillsbury had failed to prove its case by a preponderance of the evidence. Among other things, Judge Benson pointed out that there was evidence in the record which could support alternative theories of causation, and there was evidence from

which the court could conclude that the primary cutoff devices had operated properly. Moreover, the court found that the only evidence of possible misalignment of the piping system due to the alleged existence of a design defect came *after* the accident when the boiler was rebuilt. Thus, in light of the other evidence which was inconsistent with the plaintiff's theory of causation, we find that any error which might have existed in the admission of Loibel's report was harmless. Rule 61, Federal Rules of Civil Procedure.

Accordingly, the decision of the district court is affirmed.

---

**2.** Loibel's report was admitted into evidence during Cleaver-Brooks' cross-examination of Nichols. Nichols testified that he had signed each page of Loibel's report and that it was his personal policy to sign reports made by servicemen whenever a report is reviewed with him and he understands its contents. In addition, Nichols specifically agreed that his signature indicated that the content of the report was accurate to his knowledge.

Pillsbury attempted to discredit the notion that Nichols had adopted the report on their voir dire. In response to the plaintiff's questions, Nichols testified that his signature did not mean that he vouched for the truth of what Penn had told Loibel, and that he was not

present during those conversations. This court previously has held, however, that personal knowledge is not a prerequisite for the adoption of another's statement pursuant to Rule 801(d)(2)(B) of the Federal Rules of Evidence. *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626, 630–31 (8th Cir. 1978).

**3.** Although Judge Benson commented that the statements contained in the report were admissions against interest, it is clear from the comments of counsel and the foundation laid for the admission of the exhibit that it was offered as an admission of the employees of the party opponent.