**Aaron R. STULL; Ralph G. Stull; and Gloria E. Stull, Appellees,**

v.

**FUQUA INDUSTRIES, INC., Appellant.**

No. 89–1978.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1990.

Decided July 2, 1990.

As Amended on Denial of Rehearing and Rehearing En Banc Aug. 20, 1990.

Paul L. Wickens, Kansas City, Mo., for appellant.

James R. Fossard, Springfield, Mo., for appellees.

Before JOHN R. GIBSON, Circuit Judge, BRIGHT, Senior Circuit Judge, and MAGILL, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Defendant/appellant Fuqua Industries, Inc. (Fuqua) appeals the district court's [1] judgment in favor of plaintiffs/appellees Aaron Stull and his parents Ralph and Gloria Stull in this successful action for damages sustained by Aaron Stull while operating an allegedly defective Snapper riding lawn mower manufactured by Fuqua. Fuqua seeks a new trial, contending that the trial court made numerous erroneous evidentiary rulings, incorrectly instructed the jury and incorrectly refused to grant a new trial on grounds of accumulation of errors. We reject these contentions and affirm the judgment.

## I. BACKGROUND

On August 6, 1981, Aaron Stull, then seventeen years old, mowed for pay the lawn of a homeowner in Springfield, Missouri, with a Snapper Comet model 3081 riding lawn mower. While riding the mower, Stull encountered a swarm of wasps and moved quickly to avoid being stung. In doing so, Stull got his left foot caught underneath the mower and suffered severe injuries. The primary factual dispute in this case is how the accident occurred. Stull maintains that he ducked to avoid the wasps but remained seated and that his foot slipped off the mower and became trapped between the blade housing and a curved metal bar (called a foot guard) on the side of the blade housing. Fuqua contends that Stull jumped off the mower and inadvertently placed his left foot on the ground outside of the foot guard in the path of the mower and that the mower then ran over his foot.

Stull and his parents filed suit in state court against Fuqua and against the homeowner whose lawn Stull was mowing at the time of the accident. The Stulls settled their claims and dismissed the action against the homeowner. Fuqua then removed this action to federal district court on the basis of diverse citizenship of the parties and the requisite amount in controversy.

In a four-day trial, the plaintiffs contended that an unreasonably dangerous design defect in the lawn mower caused Stull's injury. The jury returned a verdict in favor of Stull in the amount of $250,000, for personal injuries and lost wages, and a verdict in favor of Stull's parents in the amount of $20,093.63, to compensate them for medical expenses.

The court initially entered judgment in the amount of $270,093.63 but on Fuqua's motion amended the judgment to reflect an $8,000 credit due under Missouri law for settlement with the homeowner. Fuqua also moved for a new trial or alternatively, judgment notwithstanding the verdict or remittitur, but the trial court denied the motion. This timely appeal followed.

## II. DISCUSSION

### A. Evidentiary Issues

Fuqua first argues that the trial court erred in excluding a hospital record stating that the accident occurred when Stull "jumped off the lawn mower." Fuqua sought to introduce this record into evidence to corroborate its theory that Stull's own action, not a defect in the mower, caused the accident. Fuqua contends that the statement falls within Fed.R.Evid. 803(4), the medical records exception to the hearsay rule. We disagree.

The complete statement in the hospital record reads: "Apparently, he was riding a lawn mower when he got into a bunch of wasps and jumped off the lawn mower and got his left heel under the lawn mower." The medical records exception to the hearsay rule assumes that a person making a statement for the purpose of obtaining medical diagnosis or treatment will likely tell the truth to a medical person and that the statement is therefore inherently reli-

---

**1.** The Honorable Russell G. Clark, United States District Judge for the Western District of Missouri.

**1274**

able. Hence, to fall within the exception, the statement must be obtained from the person seeking treatment, or in some instances from someone with a special relationship to the person seeking treatment, such as a parent.

Here the word "apparently" in the hospital record indicates that the statement about jumping off the mower may not have been made by Stull; it may instead represent conjecture on the part of the person filling out the record. Fuqua introduced no evidence rebutting this possibility. In fact, Dr. Wolf, the treating physician, testified that he did not know from whom the statement was obtained. In the absence of any evidence attributing the statement to Stull, the district court acted well within its discretion in excluding the hospital record. *Cf. Petrocelli v. Gallison*, 679 F.2d 286, 289–90 (1st Cir.1982) (statements of medical diagnosis in hospital records did not fall within the business records exception to the hearsay rule in the absence of any evidence attributing the statement to doctors or other persons with knowledge); *see generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(4)[01] (1988).

■ In a related contention, Fuqua argues that the trial court erred in excluding a letter written by Stull's counsel to the Consumer Product Safety Commission (CPSC)[2] in which counsel stated that Stull "tried to jump off the mower."[3] Fuqua contends that this admission by the representative of a party-opponent, Fed.R.Evid. 801(d)(2)(D), should have been admitted to corroborate Fuqua's theory of the case and to impeach Stull's testimony that he never told anyone that he jumped off the mower.

Federal trial courts possess broad discretion to exclude confusing or misleading evidence. *See* Fed.R.Evid. 403, 611(a).[4] Here

the trial court excluded the CPSC letter as ambiguous. Transcript at 167. In common usage, the word "jump" could mean the action of springing into the air or it could mean any sudden movement. *See Webster's New International Dictionary* 1345 (2d ed.1959). One meaning supports Stull's theory of the accident and the other supports Fuqua's theory. Given these widely different meanings ascribed to the word "jump," the letter had the potential to confuse the jury and had limited value for corroborating Fuqua's theory of the accident. We determine that the trial court did not abuse its discretion in excluding the CPSC letter.

■ Fuqua next argues that the trial court erroneously excluded Fuqua's exhibits 30 and 31. These exhibits were letters written in 1975 by Clifford Boylston, an employee of Fuqua's, to John Sevart, an expert witness for Stull who was a professor of engineering at the time the letters were written. Exhibit 30 discussed a Snapper mower that Sevart had received from Fuqua for testing. Exhibit 31, written about five months after the other letter, stated that "[d]uring our last phone conversation, you mentioned that one of your associates might be interested in purchasing the [mower] which we had sent you for testing. Based on your advice that the mower has survived your testing in a safe operational condition, we are willing to sell it for $411.00." Fuqua argues that the letters served to impeach Sevart's contrary opinion that the Snapper Comet model 3081 mower was defective and that he would not recommend it to his family or business associates.

We perceive no error in excluding exhibits 30 and 31. First, the letters were writ-

---

**2.** The Consumer Product Safety Commission is an independent federal regulatory agency.

**3.** Counsel wrote to the CPSC seeking information about similar incidents involving the Snapper Comet model 3081.

**4.** The trial court's authority to exclude misleading or confusing evidence derives from both Rule 403 and Rule 611(a).

Rule 403 is a catch-all rule giving the judge the right to reject evidence which may be

relevant but is confusing or misleading to the jury. Rule 611(a) authorizes the court to exercise reasonable control over the mode of interrogating witnesses so as to effectively ascertain the truth, avoid needless consumption of time, and protect witnesses from harassment and undue embarrassment.

M. Bright & R. Carlson, *Objections at Trial* 5 (1990).

ten not by Sevart, but by Boylston, and thus constituted self-serving hearsay. Moreover, assuming that Sevart actually made a statement in 1975 about the mower passing safety tests, the statement did not relate to the mower's safety with respect to foot entrapment. In 1975, Sevart conducted tests only with respect to the mower's propensity to propel and throw objects following blade contact. Transcript at 444. Thus, the letters possessed little or no value for impeaching Sevart's trial testimony that he considered the Snapper Comet model 3081 unsafe because of the danger of foot entrapment. Furthermore, the sale of the mower to Sevart's colleague occurred thirteen years prior to the trial in this action, long before Sevart formed an opinion about foot entrapment. Transcript at 442–43. Accordingly, we reject Fuqua's contention that the district court erred in excluding these letters.[5]

■ Fuqua next contends that the district court erroneously prevented expert witness Clifford Boylston from testifying to his opinion that Stull's leg would have broken if his foot had been trapped between the foot guard and the blade housing, as contended by plaintiffs. Boylston is executive vice-president of Fuqua's Snapper Division and an expert in mechanical engineering. The trial court sustained Stull's objection to Boylston's opinion on the grounds that the question about human anatomy fell outside the expertise of the witness.

"A witness may testify as an expert 'if his knowledge of the subject matter qualifies him to offer an opinion that will most likely assist the trier of fact in arriving at the truth.'" *Federal Crop Ins. Corp. v. Hester,* 765 F.2d 723, 728 (8th Cir.1985) (quoting *Sweet v. United States,* 687 F.2d 246, 249 (8th Cir.1982)); Fed.R.Evid. 702. Boylston's expertise in mechanical engineering qualified him to testify about the workings of the lawn mower and to some degree about the interaction between the

human body and the mower. But Boylston possesses no demonstrated expertise in human anatomy and the ruling sustaining the objection fell well within the trial judge's discretion.

■ Fuqua argues next that the trial judge erred in permitting the introduction of testimony indicating that Fuqua possessed some knowledge of the danger of foot entrapment. Specifically, Fuqua contends that Stull should not have been permitted to introduce the testimony of expert witness John Sevart that he attended several CPSC meetings where Fuqua representatives, including Clifford Boylston, were present and the possibility of foot entrapment in a mower like the Snapper Comet model 3081 came under discussion. Fuqua also contends that the district court improperly permitted Stull to introduce the testimony of Elmer Theilen to the effect that he had once sustained injuries when his foot became trapped between the foot guard and the blade housing of a Snapper mower.

The district court admitted the Sevart and Theilen testimony for the purpose of impeaching the credibility and rebutting the testimony of Fuqua's expert witness Boylston. Boylston had testified that it was extremely unlikely that a foot would get trapped between the foot guard and the blade housing of a Snapper lawn mower and that he had never seen an injury that had occurred in that area. Transcript at 533–34. Boylston also testified on cross examination that he had never heard of Elmer Theilen but that "if there was anything going on in that case that would support the fact that he was actually injured by having his foot inside the foot guard I would know it." Transcript at 569.

Rebuttal testimony may be used "to explain, repel, counteract or disprove the evidence of the adverse party." *United States v. Finis P. Ernest, Inc.,* 509 F.2d 1256, 1263 (7th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 124 (1975).

---

**5.** Fuqua also argues that the trial court not only excluded exhibits 30 and 31 but also cut off the entire line of questioning. The record demonstrates, however, that Stull objected only to ex-

hibits 30 and 31 and that the trial court sustained the objection only to the exhibits. See Transcript at 447.

The Theilen and Sevart testimony indicated to some degree the likelihood of a foot entrapment accident. The testimony therefore served to rebut Boylston's expert testimony expressing a contradictory opinion. Hence, the trial court did not abuse its discretion in admitting the testimony.[6]

■ Fuqua's final evidentiary contention challenges the district court's ruling permitting Dr. Wolf, Stull's expert witness, to testify that future surgery on Stull's heel would be necessary. Fuqua maintains that at his deposition Dr. Wolf did not state that Stull would need future surgery and that Dr. Wolf formulated an opinion about the need for future surgery only after Fuqua moved to exclude any testimony about this subject. Fuqua contends that it received the report of a physical examination conducted by Dr. Wolf stating that Stull would need future surgery only four days before the trial and well after the discovery cutoff date. The trial court thereafter overruled Fuqua objections and permitted Dr. Wolf to testify about the need for future surgery on Stull's foot.

Fuqua now argues that plaintiffs abused the discovery process and that the admission of Dr. Wolf's opinion about the need for future surgery constitutes reversible error because Fuqua had no opportunity to redepose Dr. Wolf or to retain its own expert to rebut Dr. Wolf's opinion. Fuqua's contention raises no issue requiring reversal. The trial court's rulings relating to discovery will be upheld "unless, in the totality of the circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness in the trial of the case." *O'Neal v. Riceland Foods*, 684 F.2d 577, 581 (8th Cir.1982) (quoting *Voegeli v. Lewis*, 568 F.2d 89, 96 (8th Cir.1977)).

We need not decide whether plaintiffs' actions constituted an abuse of the discovery process. Here, another of Stull's expert witnesses, Dr. Puckett, testified at his videotape deposition of the possibility that additional surgery to Stull's heel would be necessary in the future. Fuqua thus received some notice that Stull contended his damages included future medical expenses and the introduction of Dr. Wolf's testimony did not amount to unfair surprise at trial. Accordingly, the admission of the questioned testimony, if error at all, did not prejudice Fuqua.[7]

**B. Jury Instructions**

■ Fuqua argues that the trial court improperly refused its jury instruction on contributory fault. Fuqua contends that under Missouri law, which governs the substantive aspects of this case, a contributory fault instruction is appropriate where the evidence demonstrates that the plaintiff "voluntarily and unreasonably exposed himself to a known danger." *Lippard v. Houdaille Indus., Inc.*, 715 S.W.2d 491, 493 (Mo. banc 1986).

It is true, as Fuqua contends, that the record demonstrates Stull's awareness of the dangers inherent in the use of a power lawn mower such as the Snapper Comet model 3081. But the record does not demonstrate that Stull discovered or knew of the defect in the lawn mower, *i.e.*, the possibility of entrapment. Missouri law provides for a contributory fault instruction where the plaintiff knew of such defect alleged to have caused the injury. *See Keener v. Dayton Elec. Mfg. Co.*, 445 S.W.2d 362, 365 (Mo.1969); *see also Means v. Sears Roebuck & Co.*, 550 S.W.2d 780, 787 n. 6 (Mo. banc 1977). The trial court therefore did not err in denying Fuqua's contributory fault instruction.

---

**6.** In a related contention, Fuqua argues that the evidence of the Theilen accident was not relevant because Stull did not establish as a foundation that the two accidents occurred under substantially similar circumstances. The record demonstrates otherwise. Theilen testified that he was operating a similar model of the Snapper mower in a similar fashion and that his foot slipped between the curved metal foot guard

and the blade housing and became trapped. See Transcript at 728–37.

**7.** In addition, Stull's introduction of Dr. Puckett's deposition at trial brought the issue of future damages before the jury, thus rendering harmless any possible error in admitting Dr. Wolf's similar testimony.

Fuqua next argues that the trial court's use of Missouri Approved Jury Instruction (MAI) 25.04 (1978 revision)[8] as modified by MAI 19.01 (1986 revision)[9] impermissibly lowered Stull's burden of proof on causation. The court instructed the jury that it could award a verdict for Stull if it found *inter alia* that the defect in the mower "caused or directly contributed to cause" damage to Stull. Transcript at 778–79. Without the MAI 19.01 modification, the jury would have received instructions that to award a verdict for Stull the damages must have resulted directly from the defect in the mower. See MAI 25.04. Fuqua contends that the MAI 19.01 modification applies only in cases with multiple contributing causes of damages and that the impermissible lowering of the burden of proof in this case with only one cause of damages constitutes reversible error.

Fuqua fails to recognize, however, that this case presents more than one possible cause of damages. Stull encountered a swarm of bees just prior to the accident, moved to avoid the bees and then got his foot caught underneath the mower. Under Missouri law, to recover damages the defect in the lawn mower need not constitute the sole cause of Stull's injury. *Gaines v. Property Servicing Co.*, 276 S.W.2d 169, 173–74 (Mo.1955). Fuqua could be liable if the defect combined with a natural cause, such as the bees, to cause the accident and the injury. *Beineke v. Terminal R.R. Ass'n of St. Louis*, 340 S.W.2d 683, 688 (Mo.1960) (citing cases). We therefore reject Fuqua's argument that the trial court incorrectly instructed the jury under Missouri law.[10]

We also reject Fuqua's argument that the evidence failed to support an instruction on future damages. The trial court instructed the jury that it could award Stull compensation not only for any damages already sustained, but also for any damages he "is reasonably certain to sustain in the future, as a direct result of the occurrence mentioned in the evidence." Transcript at 778. "Long continuance of conditions existing at trial is sufficient to warrant" this future damages instruction. *Chaussard v. Kansas City Southern Ry.*, 536 S.W.2d 822, 829 (Mo.Ct.App.1976) (citing *Jones v. Allen*, 473 S.W.2d 763, 766 (Mo.Ct.App.1971)). Given the extensive evidence in the record that Stull's injuries continued until trial (a period of almost eight years), we conclude that the trial court did not err in giving the future damages instruction.[11]

## III. CONCLUSION

In summary, the record shows no trial court errors warranting reversal. Accordingly, we affirm the judgment of the district court.

---

**8.** MAI 25.04 provides: "Your verdict must be for plaintiff if you believe ... plaintiff was damaged as a direct result of such defective condition as existed when [the product] was sold."

**9.** MAI 19.01 provides:

In a case involving two or more causes of damage, the "direct result" language of paragraph Third of verdict directing instructions such as 17.01 and 17.02 might be misleading. In such cases plaintiff, at his option, may substitute one of the following:

Third, such negligence directly caused or directly contributed to cause damage to plaintiff.

Third, such negligence either directly caused damage to plaintiff or combined with [another cause] to directly cause damage to plaintiff.

**10.** We also note that federal trial courts applying state law need not use the exact language of model or approved jury instructions. *Chohlis v. Cessna Aircraft Co.*, 760 F.2d 901, 904–05 (8th Cir.1985).

**11.** Because we reject Fuqua's specific contentions of error on the part of the district court, we need not address Fuqua's additional contention that the trial court's cumulative errors warrant a new trial.