**Ilo Marie GRUNDBERG,
et al., Plaintiffs,**

**v.**

**The UPJOHN COMPANY, Defendant.**

**No. 89–C–274 G.**

United States District Court,
D. Utah, C.D.

June 12, 1991.

C. Neal Pope, Edward H. Kellogg, Jr., Atlanta, Ga., Gary W. Pendleton, St. George, Utah, H. Ross Workman, Salt Lake City, Utah, for plaintiffs.

Lane E. Bauer, Stephen E. Scheve, Kansas City, Mo., Merlin O. Baker, Paul S. Felt, Thomas L. Kay, Steven J. Aeschbacher, Salt Lake City, Utah, for defendant.

## MEMORANDUM AND ORDER ON THE USE OF PROTOCOL 321 REPORT FORMS

RONALD N. BOYCE, United States Magistrate Judge.

The defendants have objected to a subpoena issued by plaintiffs to defendant to produce the underlying raw data of Protocol 321.[1] These are the report forms used to record the reaction of persons tested in relation to the use of Halcion in conjunction with clinical study 321 which was conducted prior to the marketing of Halcion by defendant, Upjohn.

The report forms for protocol 321 were filled out by persons used in testing the effect of the ingestion of the drug Halcion and its impact on human subjects. The test was performed at Jackson State Prison in Michigan and the subjects were prisoners. They were exposed to Halcion dosages of .5 mg. and 1 mg. for 42 days. The test was a phase II study preliminary to Federal Drug Administration approval of Halcion. The tests were conducted on a relatively small number of subjects who have the disease the drug was designed to treat. The clinical trial investigator used the report forms for the assessment of the drug. The test was conducted at a facility provided by Upjohn at the Jackson State Prison. The supervising test physician was Dr. H.L. Oster. At this point, Dr. Oster's connection with Upjohn is not clearly determined. He was apparently not an employee of Upjohn, but what his particular connection to Upjohn was, has not been fully identified. He was using Upjohn's facility and testing Upjohn's product. His report and data was used to obtain FDA approval for Halcion.

The defendant contends Dr. Oster's study was not performed under Upjohn's control and that Oster was not Upjohn's agent. The protocol was submitted by Upjohn to the Food and Drug Administration (FDA). The plaintiffs contend that since Upjohn submitted the materials as a clinical basis for FDA approval of Halcion (on or about May 4, 1976) the materials are at least adoptive admissions by Upjohn. Plaintiffs further argue the protocol report forms are otherwise admissible as substantive evidence. The plaintiffs have contended that generally, at the time of the testing, drug manufacturers were not required to send such clinical studies to the FDA, but Upjohn was required to make full reports of "clinical investigations" to show

---

1. The protocol 321 summary has been provided and is to be used as a part of the expert testimony and exhibits of defendant, and will be offered at trial.

the drug safety. The clinical tests encompassed by FDA requirements are those sponsored by the applicant or received or otherwise obtained by the applicant seeking new drug approval. However, the reports were used only when the new drug application was submitted to the FDA for approval. Plaintiffs contend the submission of the reports by Upjohn "manifests an adoption of" the "protocol and the accompanying case report forms ..." The plaintiffs also contend that Dr. Oster was the "resident investigator" for Upjohn from 1957 to 1979.[2]

Also relevant to the issue of the admissibility of protocol 321 report forms is the ruling of District Judge Greene[3] as to the scope of plaintiffs' claims in light of the Utah Supreme Court's ruling in *Grundberg v. The Upjohn Company*, 813 P.2d 89 (Sup. Ct.1991). On May 24, 1991 Judge Greene ruled, in denying a partial motion for summary judgment of Upjohn, "that matters of mismarketing, failure to warn, misrepresentation of FDA and defective design may be presented as matter of evidence under the strict liability cause of action." (Hearing of May 24, 1991, Minute Entry).

This ruling would allow into evidence any matter relevant to those issues.

The plaintiffs intend to use the protocol 321 case report forms as substantive evidence. They have been subpoenaed by plaintiffs as an exhibit and it is intended they will be offered as substantive evidence at trial. District Judge Greene has determined the magistrate judge should rule on Upjohn's objections and on any restrictions on the use of the documents. The defendant contends the procedural posture of the case should preclude admission because the documents were not obtained during the discovery period. However, the defendant had the documents, knew of their general content, and has shown no prejudice from the fact that plaintiffs did not make copies during the discovery period.

■ A more substantial objection is that the defendant has deposed the plaintiffs' experts and no inquiry was made as to the protocol 321 materials because the reports (as distinct from the 321 summary) was not relied on by any expert. However, Rule 703, F.R.E. expressly allows an expert to rely on material "made known to the expert at ... the hearing." Thus, an expert can always expand on the basis of an opinion over that on which the expert may have relied at trial. The *Notes of the Advisory Committee on 1972 Proposed Rules* observes the "second source" of expert testimony is "presentation at trial," which "reflects existing practice." A party deposing an expert witness cannot limit the witness to matter in his deposition if new matter supports the expert. The party against whom the new information is offered may bring out the recent additions to the expert opinion as it may bear on credibility. See *Weinstein's Evidence*, ¶ 703[01] p. 703–6; *United States v. King*, 616 F.2d 1034 (8th Cir.1980) (IRS summary witness). However, if an expert is going to rely on evidence introduced at trial, the evidence will need to be admissible. The plaintiffs contend the protocol reports are independently admissible and unable to support plaintiffs' contentions.

■ Of course, an expert, under Rule 703, F.R.E. may rely on material made available before trial and then the evidence itself need not be admissible. *Ramsey v. Culpepper*, 738 F.2d 1092, 1110 (10th Cir. 1984); *Graham v. Wyeth Laboratories*, 906 F.2d 1399 (10th Cir.1990); *Wilson v. Merrell Dow Pharm. Inc.*, 893 F.2d 1149, 1152–53 (10th Cir.1990).

The defendant, Upjohn, argues that since Ilo Grundberg was never given a 1 mg. dosage of Halcion the reports as to the effects of that dosage are irrelevant. The

---

**2.** In resolving the admission of the report forms the court may consider evidence to establish the preliminary facts to determine preliminary admissibility. The court accepts that there was at least some form of a contractual relationship between Dr. Oster and Upjohn.

**3.** Judge Greene has referred the parties numerous pretrial requests for evidentiary rulings to the magistrate judge. 28 U.S.C. § 636(b)(1)(A).

plaintiffs counter that Upjohn's experts view dosage as irrelevant and that if the drug would produce any unorthodox response, it would occur regardless of dosage. Therefore, the 1 mg. studies are possibly logically relevant. It is admitted that Ilo Grundberg did receive a .5 mg. dosage of Halcion and some of the protocol 321 reports did involve .5 mg. testing. These reports would be relevant to the issues.

A major objection, advanced by Upjohn to the use of the protocol 321 report forms, is the contention they are hearsay. The plaintiffs have advanced several arguments for the admission of the evidence as non-hearsay or as an exception to the hearsay rule.

### Admissibility as Regularly Kept Records (Rule 803(6) F.R.E.)

■ Plaintiffs suggest the protocol report forms are admissible under Rule 803(6), F.R.E. as regularly kept records. The records are different than the drug experience reports previously ruled inadmissible as business records, (Supplemental Orders Motion # 19), because the reports in question are part of a structured model of a clinical study. The summary of protocol 321 gives some evidence of methodology of the research protocol. The plaintiff contends they are data compilations of events at or near the time of the experience. It is contended the reports were part of the regular practice of the drug company, Upjohn, of conducting clinical research projects on new drugs. Certainly, medical research protocol activities are no less accurate as a regularly reported course of conduct than as hospital records which are expressly and regularly admitted under 803(6). They are more reliable than anecdotal statements from prisoners that are made during the course of an investigation into a prison disturbance. See *United States v. Snyder*, 787 F.2d 1429 (10th Cir. 1986) (excluding prison investigative reports).

The reports are the type of documents regularly kept as a part of a carefully conducted research protocol. *Higgins v. Martin Marietta Corp.*, 752 F.2d 492 (10th Cir.1985) (physician's records could include report in letter form). The defendant's own submission of the protocol to the FDA shows some degree of acceptance of the efficacy of the research model. The nature of the project establishes the regularity of the reporting obligation and therefore the justification for acceptance of the reports as routinely reported information. See *Federal Aviation Administration v. Landy*, 705 F.2d 624 (2d Cir.1983).

Certainly the material is as trustworthy as the observations of Department of Agriculture investigators recording their observations which were ruled admissible under Rule 803(6), F.R.E. in *Haskell v. U.S. Dept. of Agriculture*, 930 F.2d 816 (10th Cir. 1991). The prisoners involved in the Halcion research had both a moral and contractual duty to accurately report their experiences.[4] In this way, the circumstances of protocol 321 differ from the diary experiences recorded and rejected in *Clark v. City of Los Angeles*, 650 F.2d 1033 (9th Cir.1981), which was an authority relied on by the magistrate judge for excluding drug experience reports under Rule 803(6) F.R.E. See also, *United States v. Carranco*, 551 F.2d 1197 (10th Cir.1977) (federal rules favor admission); *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324 (10th Cir.1984).

The protocol 321 reports are, therefore, admissible as regularly kept records, if other standards for admissibility are met. Such records must be adequately authenticated. *Vesper Const. Co., Inc. v. Rain for Rent, Inc.*, 602 F.2d 238 (10th Cir.1979); *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613 (8th Cir.1983). The protocol 321 summary cannot itself authenticate the reports. A custodian or other qualified witness must establish the foundation for admissibility. *United States v. Bowers*, 593 F.2d 376 (10th Cir.1979). The plaintiffs have not authenticated the protocol reports. However, if they can do so, then, subject to establishing relevance, the hear-

---

4. The fact that the reporting persons were prisoners may raise some question of credibility. However, this is not the kind of activity where "prisonization" significantly effects credibility.

say rule is not an impediment to their admission.

However, in the absence of foundation from someone familiar with the study, the reports do not qualify for admission under Rule 803(6), F.R.E.

### Sentiments for Purpose of Medical Diagnosis or Treatment

■ The plaintiffs assert that the statements of the test subjects, made in the clinical experiment in protocol 321, should be admitted as an exception to the hearsay rule for statements of medical diagnosis of treatment, Rule 803(4), F.R.E.

In, *Garcia v. Watkins*, 604 F.2d 1297, 1299 (10th Cir.1979) the court held a statement inadmissible under Rule 803(4) because it was not made in the presence of a physician in connection with medical treatment. In, *United States v. Bizzard*, 674 F.2d 1382 (11th Cir.1982) the court held information in a prison medical questionnaire was not admissible under Rule 803(4). However, in *United States v. Iron Thunder*, 714 F.2d 765 (8th Cir.1983) the court held information reported by a rape victim to a physician following an assault was admissible even though the information was given as part of a "protocol" for prosecution. However, it appears the controlling element is whether the information is given by someone "seeking medical treatment." *Stull v. Fuqua Industries, Inc.*, 906 F.2d 1271 (8th Cir.1990). Even though 803(4), F.R.E. expanded admissibility over the prior common law standard, which was limited to statements made by the patient for treatment, *United States v. Iron Shell*, 633 F.2d 77 (8th Cir.1980), not every statement to a physician is rendered admissible. The motive of the declarant must be for treatment or diagnosis. *United States v. Renville*, 779 F.2d 430, 436 (8th Cir.1985). The statement must be consistent with promoting treatment, *Id.; Garcia v. Watkins, supra*.

In this case, the declarations of the persons receiving Halcion were not made for their own treatment, but for the purposes of the research protocol. Dr. Oster was not a treating or diagnosing physician for the prisoners' own medical problems, but an institutional researcher. It cannot be concluded the reports were made for treatment for diagnosis. They are inadmissible under Rule 803(4), F.R.E.

### F.R.E. 803(24)

At hearing, the magistrate judge asked plaintiffs' counsel if admissibility of the protocol reports was claimed under the catchall provisions of Rule 803(24) F.R.E. The initial reply was *"no"*. During argument attorney Tomlinson indicated the possibility of admission under Rule 803(24) F.R.E. was not to be excluded if it were in fact proper.

However, in light of the first denial of the applicability of Rule 803(24) and the fact that the record does not show written notice required by the rule nor a basis for concluding the protocol reports are more probative on the point for which they would be offered than other evidence the proponent could obtain, the court can not find the standards of Rule 803(24) F.R.E. to have been satisfied.

### Non–Hearsay Adoptive Admissions

■ The plaintiffs vigorously argue that protocol reports are admissible as non-hearsay adoptive admissions under Rule 801(d)(2)(B) F.R.E.[5] An adoptive admission may be oral or written or by conduct. *Graham Handbook of Federal Evidence*, 3d Ed. § 80120 (1991).

In this case, Upjohn used the clinical reports in seeking FDA approval of Halcion. The records were submitted even if Upjohn was not fully obligated to do so. Whether Dr. Oster was an Upjohn researcher or not, Upjohn accepted his research and used it for FDA new drug approval. Upjohn obviously believed the reports satisfied the phase II, FDA clinical study criteria. It may be that by this ruling, drug companies will be held to have adopted their preliminary supporting re-

---

**5.** Because the status of Dr. Oster is unclear, and the reports are not his declarations, they are not admissible under Rule 801(d)(2)(C) or (D) F.R.E.

search. If not, they should critically examine the research data for applicability and not use it for FDA approval or otherwise manifest a rejection of such information. If a drug company uses a research protocol as confirming information, it necessarily adopts it. Upjohn cannot use the reports to support a new drug application and then deny it accepts the research.

The court would not go so far as to accept the claim that possession of a document is an adoption of it. See *United States v. Marino*, 658 F.2d 1120, 1125 (6th Cir.1981).[6] It has been said adoption may come from annexation of documents prepared by others to forms and submitted in various contexts. Graham, supra p. 783 relying on, *In re Japanese Electronic Products*, 723 F.2d 238 (3d Cir.1983) reversed on other grounds 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538.

Apropos to this issue is *Wagstaff v. Protective Apparel Corp. of America*, 760 F.2d 1074, 1078 (10th Cir.1985). Suit was brought on a wrongful death claim associated with a commercial business venture. Claims arising from the business venture were also alleged by plaintiff. Defendants had provided plaintiff's decedent with copies of reprints of newspaper articles. The trial court excluded the articles as hearsay, but the Court of Appeals held the ruling to be error:

> This decision was incorrect. Fed. R.Evid. 801(d)(2) provides that a statement is not hearsay if it is offered against a party and is "a statement of which he has manifested his adoption or belief in its truth." By reprinting the newspaper articles and distributing them

to persons with whom defendants were doing business, defendants unequivocally manifested their adoption of the inflated statements made in the newspaper articles. Therefore, it was an abuse of discretion for the district court to refuse to admit this very relevant evidence of fraud.

In this case, it must be concluded that when Upjohn submitted the protocol 321 reports to the FDA with its new drug application in order to obtain approval of Halcion it was unequivocally adopting the conclusions of the study and the information in the protocol reports.[7] Upjohn manifested its approval of the statements associated with the 321 protocol reports in submitting them to the FDA as a basis for approval of Halcion. It would be illogical to allow Upjohn to benefit by the submission of the protocol reports for drug approval and then deny the same declarations as Upjohn's if they are against Upjohn's current position. See *Dugan v. EMS Helicopters*, 915 F.2d 1428 (10th Cir.1990) (previous pleadings taking contrary position to that in present litigation are admissible against plaintiff as adoptive admissions).

■ Even if the person adopting the statement had no personal knowledge or first hand information about the reports, if a person manifests their acceptance of information, the admission by adoption is admissible non-hearsay evidence. *Mahlandt v. Wild Canid Survival & Research Center, Inc.*, 588 F.2d 626 (8th Cir.1978); *Pillsbury Co. v. Cleaverbrooks Division of Aqua–Chem., Inc.*, 646 F.2d 1216 (8th Cir. 1981). Here Upjohn not only manifested

---

**6.** See Professor Graham's criticism and rejection of the validity of the possession argument as the standard of adoption, supra p. 783.

**7.** Recently in *State v. Carlson*, 311 Or. 201, 808 P.2d 1002, 1006 (1991) the Oregon Court in a carefully considered opinion stated:

> Manifestation of an adoption or belief in the truth of a hearsay statement of another may occur "expressly, impliedly, by conduct or, in a civil case, by silence." *State v. Severson*, supra, 298 Or. [652] at 657, 696 P.2d 521 [1985]. A party adopts the proffered statement of another person when that party's words or conduct "indicate that [he or she]

'intended' to adopt the statement." Id. at 660, 696 P.2d 521. A party manifests a belief in the truth of another's statement when the party intends to embrace the truth of the statement, i.e., intends to agree with or approve the contents of the statement.

The court also held the adoption issue to be one for the judge under what is Rule 104(a) F.R.E. However, federal courts have concluded the matter should be resolved by submission to the jury under Rule 104(b), F.R.E. *United States v. Barletta*, 652 F.2d 218 (1st Cir.1981). Graham, supra 3d Ed. p. 784. This court should follow this position and admit the evidence under Rule 104(b) procedure.

its belief in the protocol, the research was submitted to the FDA and had been conducted at Upjohn's facility. This is enough to show adoption. See *White Industries, Inc. v. Cessna Aircraft Co.,* 611 F.Supp. 1049 (W.D.Mo.1985). In this circumstance the case is significantly different than the facts in *New England Mut. Life Ins. Co. v. Anderson,* 888 F.2d 646 (10th Cir.1989) where there was no evidence the party in question "acquiesced" to a newspaper account.

Therefore, subject to considerations of relevancy and authentication foundation, the 321 protocol reports are admissible as non-hearsay adoptive admissions.

### Non–Hearsay, Use to Prove Misrepresentation to FDA

■ District Judge Greene has ruled that the substantive issues in this case will allow plaintiff to prove that Upjohn misrepresented the effects of Halcion to the FDA. The reports of the protocol 321 may be directly relevant to that issue. In that context the reports could be admissible as non-hearsay evidence. The reports would not be offered for their truth but to show that the reports were not consistent with the conclusions drawn by Upjohn about Halcion in the protocol summary or its new drug application. The report evidence would not be offered "to prove the truth of the matter asserted," Rule 801(c) F.R.E., but to show a variance between the protocol reports and Upjohn's contentions to the FDA. *Anderson v. United States,* 417 U.S. 211, 219, 94 S.Ct. 2253, 2260, 41 L.Ed.2d 20 (1974); *United States v. Shepherd,* 739 F.2d 510, 514 (10th Cir.1984); *United States v. Morales–Macias,* 855 F.2d 693, 694–95 (10th Cir.1988); *United States v. Mobile Materials,* 881 F.2d 866 (10th Cir.1989); *Anderson v. Cramlet,* 17 Fed. Rules Evid.Serv. 718 (D.Colo.1984); Graham, supra § 801.5.

However, at this point the plaintiffs have not had an opportunity to show any disparity or misrepresentation between the protocol reports and other information submitted to the FDA by Upjohn or show how the reports might bear on plaintiffs' misrepresentation claim. The plaintiffs should therefore be afforded an opportunity to examine the reports and make a subsequent submission to the magistrate judge as to what portions of the protocol reports bear on the misrepresentation issue and how they would be relevant and how they would be used.

### Relevance

The reports are relevant on the issue of what was submitted to the FDA. In addition, the .5 mg. reports may be relevant as to legitimate clinical experiences of the protocol evaluees with the synonymous experience of Ilo Grundberg while being medicated with Halcion at the .5 mg. level. The difference in the clinical experience at .5 mg. and the particular circumstances associated with Ilo Grundberg's use, although somewhat at variance, are matters that go to the weight of the evidence not its admissibility. The relevance of the evidence under Rules 401, 402, F.R.E. is not "substantially" outweighed by the possibility of juror confusion. See Rule 403, F.R.E.

The relevance of the 1 mg. testing reports is less directly or obviously relevant. The plaintiffs have contended that defendant's experts have stated that dosage is irrelevant and that the alleged Grundberg—Halcion related experiences would have occurred or not regardless of dosage. However, in this instance the issue has not been fully explored to the satisfaction of the magistrate judge. After the plaintiffs have had an opportunity to examine the 1 mg. reports they may offer a more particularized justification of their claim of relevance. The court is concerned about possible confusion of the jury in this area, especially given the volume of technical evidence to be presented by the parties and the very large number of 1 mg. reports.

### Use of the Protocol Reports

The magistrate judge has determined the protocol 321 reports are admissible, and may be within the regularly kept records exception, are adoptive admissions and may be usable as nonhearsay subject to a prop-

er foundation being presented. The .5 mg. reports are relevant and the 1 mg. reports may also be relevant.

However, the documents are voluminous and are not usable in practical terms in the quantity examined by the magistrate judge. The plaintiffs on examination of the protocol reports should determine if the reports, where relevant, can be presented in a more understandable and manageable form. See Rule 1006, F.R.E. See *State Office Systems v. Olivetti Corp. of America,* 762 F.2d 843, 845–46 (10th Cir.1985); *United States v. Kaatz,* 705 F.2d 1237 (10th Cir.1983); *Nichols v. Upjohn Co.,* 610 F.2d 293 (5th Cir.1980) (summary of new drug application admissible).

### Order

Based on the memorandum of the magistrate judge, therefore,

IT IS HEREBY ORDERED that the objection of defendant, Upjohn, to the plaintiffs' subpoena of the reports to protocol 321 is overruled. The protocol reports are admissible, on a showing of proper foundation, under Rule 803(6) F.R.E. as regularly kept records; the reports are admissible as adoptive admissions; the reports may, on a more precise showing of relevance, be admissible as non-hearsay.

The plaintiffs shall examine the reports within ten days of this order and advise the magistrate judge (a) whether plaintiffs intend to offer the 1 mg. reports and if so, how they are relevant and how they will be presented, (b) under what theory the plaintiffs will offer the .5 mg. reports and in what form. The defendants may within 15 days of this order file an objection to plaintiffs' submission including specifically addressing the relevance of the 1 mg. reports.

The magistrate judge will thereafter rule on the specific admissibility of the protocol 321 report documents.