**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Jose Rodriguez OSPINA,
Defendant-Appellant.**

**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Oilsin CABEZAS, Defendant-Appellant.**

**Nos. 83–5249, 83–5227.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1984.

Decided Aug. 2, 1984.

Certiorari Denied Oct. 9, 1984.
See 105 S.Ct. 262.

Kendra S. McNally, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Richard G. Sherman, Samuel Jackson, Los Angeles, Cal., for defendants-appellants.

Before CHOY and SKOPIL, Circuit Judges, and WILKINS,[*] District Judge.

WILKINS, District Judge:

Jose Rodriguez Ospina and Oilsin Velasco Cabezas appeal from convictions of conspiracy to possess cocaine with intent to distribute, in violation of 21 U.S.C. § 846, and possession of cocaine with intent to distribute, in violation of 21 U.S.C. § 841. Co-conspirators and co-defendants Carlos Carrera and Vicente Romero Rivera, who were also convicted of the same offenses, are not involved in this appeal. Each appellant appeals on the ground that the evidence was insufficient to support his conviction, and that certain evidence was improperly admitted. Ospina additionally contends that the trial judge erred in refusing to admit into evidence statements made by co-defendants Carrera and Cabezas which were exculpatory as to him. We affirm the convictions of both defendants.

[*] Honorable Philip C. Wilkins, Senior United States District Judge for the Eastern District of California, sitting by designation.

## FACTS

On March 27, 1983 appellant Ospina rented a room at the Westwind Motel in Downey, California, after arriving in Los Angeles on a commercial flight from San Francisco. On the same day appellant Cabezas rented two rooms at the Imperial 400 Hotel in Long Beach, California.

On the next day, March 28, 1983, the Colombian freighter *Ciudad de Nieva*, which was docked in the Los Angeles-Wilmington Harbor, was under surveillance by a task force of federal, state, and local law enforcement officers who observed co-conspirators Carrera and Rivera entering the ship around 12:30 p.m. About 12:50 p.m. Carrera was observed leaving the ship with his jacket zipped all the way to the top even though the day was warm and sunny, and with a noticeable bulge in the lower back portion of the jacket. About five minutes later Rivera was observed leaving the ship likewise wearing a closed jacket with an unnatural bulge in the rear. After walking separately for several blocks, the two men met in front of a liquor store on Anaheim. Rivera was observed going into the liquor store and emerging about one minute later with a paper bag in his hand while Carrera made a telephone call. The two suspects then proceeded west on Anaheim to the intersection of Anaheim and Broad, where Carrera turned north and Rivera continued on Anaheim. Carrera obtained a brown tote bag, which appeared to the surveilling officers to be empty, and proceeded to the El Sirrocco Restaurant on Anaheim Street. Rivera went into the El Sirrocco Restaurant right after Carrera, and after five minutes was observed leaving that restaurant minus the previously observed bulge at his waist and proceeding to the El Pollo Lico Restaurant, which he came out of a few minutes later with appellant Cabezas. Carrera exited the El Sirrocco Restaurant after about ten minutes without the earlier unnatural bulge and carrying the brown tote bag, which now appeared to have something in it.

Carrera then proceeded to a parking lot at the southwest corner of Avalon and Anaheim where he got into the back of a taxicab, still carrying the brown tote bag, and was followed into the back of the cab by appellant Cabezas. The cab was already occupied by appellant Ospina, who was sitting in the front passenger seat with a paper bag containing aluminum foil and towels. Ospina instructed the driver of the cab to drive to a motel in Downey, giving him the written address.

The cab proceeded in the direction of Downey, and was stopped about an hour and a half later on the San Diego Freeway by law enforcement officers who had been keeping it under surveillance. Twelve packages containing 5,762.4 grams or 12.7 pounds of cocaine were found in the brown tote bag, and Carrera, Ospina, and Cabezas were arrested. Co-defendant Rivera was later arrested at the Imperial 400 Hotel where he returned.

Business cards were found later on the dresser in Ospina's room in Downey containing handwritten notations on the back. The notations included the phone number of the Imperial 400 Hotel and one of the room numbers which Cabezas had rented there, and the address of the El Sirrocco Restaurant in Wilmington where the cocaine was transferred into the tote bag and the three co-conspirators entered the taxicab.

## DISCUSSION

### I. SUFFICIENCY OF THE EVIDENCE.

Both appellants contend that the evidence produced at trial was insufficient to support their convictions. We do not agree.

■ When reviewing the sufficiency of the evidence to support a criminal conviction, the appellate court must determine, after viewing the evidence in the light most favorable to the prosecution, whether "*any* rational trier of the fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Becker*, 720 F.2d 1033, 1035 (9th Cir.1983).

■ The testimony of several law enforcement officers involved in the surveillance and arrest and of the taxicab driver established that both appellants were in the taxicab with the contraband when it was seized, and that Ospina was exercising control over the cab by securing the cab and directing the driver to go to his motel room in Downey. Business cards found in Ospina's motel room, which were properly admitted into evidence, indicated that he was in contact with the other three conspirators and that the meeting at the El Sirrocco Restaurant to pick up the cocaine was prearranged. Further testimony and a hotel receipt found in Cabezas' pocket established that Cabezas had rented the rooms at the Imperial 400 Hotel for the conspirators, and that he arrived at the prearranged corner at the proper time for the transfer of the cocaine. The jury had ample evidence of acts by these appellants in furtherance of the conspiracy to support their convictions.

## II. ADMISSIBILITY OF THE EVIDENCE FOUND IN OSPINA'S ROOM AND ON THE PERSON OF CABEZAS.

Appellants rely on *United States v. Ordonez,* 722 F.2d 530 (9th Cir.1983), *petition for rehearing pending,* for their contention that two business cards found in Ospina's room after his arrest and a motel receipt found on Cabezas at the time of his arrest should not have been admitted into evidence. One of the business cards had the phone number of the Imperial 400 Hotel where the other conspirators were staying and appellant Cabezas' room number written on it, and the other card contained the address of the location where the cocaine was transferred into the tote bag and where Ospina, Carrera, and Cabezas got into the taxicab with the cocaine. *Ordonez,* the only authority cited by appellants on this point, involved the admissibility of some ledgers for the purpose of showing that the defendant possessed a certain amount of cocaine with intent to distribute on a certain date with no other evidence offered to support the charges. The court

held there that requisite foundational facts were not presented to support admissibility of the ledgers as admissions, as statements of co-conspirators, or as business records. Admissibility of the ledgers as adopted admissions was not considered.

The prosecution contends here that the items in question are not really hearsay in that they were not admitted to prove the truth of the assertions they contained but instead to show the circumstantial relationship of the parties to the scene, to other parties, and to the cocaine. The government contends additionally that the items are admissible as adopted admissions under Federal Evidence Rule 801(d)(2)(B) because the papers were in the possession of the appellants and because Ospina acted on the information written on the cards when he travelled to the address written there to pick up the cocaine.

■ Other courts have held that possession of a written statement becomes an adoption of its contents, and that when a person acts on written instructions, and the instructions are found in his possession, the instructions are admissible as adopted admissions under Rule 801. *United States v. Marino,* 658 F.2d 1120, 1124–1125 (6th Cir. 1981); *United States v. Canieso,* 470 F.2d 1224, 1232 (2d Cir.1972). Adopted admissions are not hearsay and may be admitted into evidence. *United States v. Marino, supra,* 658 F.2d at 1125. We find that the evidence challenged in the present case is very similar to that admitted in *Marino* and *Canieso* and that it was properly admitted as adopted admissions.

## III. ADMISSIBILITY OF EXCULPATORY STATEMENTS.

Appellant Ospina contends that the trial judge erred in refusing to admit into evidence certain statements against penal interest made by co-defendants Carrera and Cabezas which were exculpatory as to him. These statements were made to customs inspector Jesse Ibarra after their arrest and indicated that the cocaine belonged to them and to no one else.

The prosecution was not permitted to use these statements in their case against Carrera and Cabezas after it was determined in a suppression hearing that *Miranda* warnings had not been given. When Carrera and Cabezas refused to testify on behalf of Ospina, and Ospina made an offer of proof to admit the statements to Ibarra into evidence under Rule 804(b)(3) of the Federal Rules of Evidence, the trial judge found that he had "no basis for determining that there's any trustworthiness to be given to such statements by Mr. Cabezas or Mr. Carrera under the circumstances."

■ The determination of admissibility of statements against penal interest under Evidence Rule 804(b)(3) is committed to the sound discretion of the trial court, and should not be disturbed on appeal absent an abuse of discretion. Further, the showing of corroborating circumstances must do more than tend to indicate the trustworthiness of the statements; they must clearly indicate it. Factors relevant to trustworthiness include the time of the declaration and the party to whom it was made, the existence of corroborating evidence, the extent to which the declaration is really against the declarant's interest, and the availability of the declarant as a witness. *United States v. Rhodes,* 713 F.2d 463, 473 (9th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 535, 78 L.Ed.2d 715 (1983); *United States v. Satterfield,* 572 F.2d 687, 690 (9th Cir.), *cert. denied,* 439 U.S. 840, 99 S.Ct. 128, 58 L.Ed.2d 138 (1978); *United States v. Hoyos,* 573 F.2d 1111, 1115 (9th Cir. 1978); *United States v. Oropeza,* 564 F.2d 316, 325 (9th Cir.1977), *cert. denied,* 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978).

■ Carrera and Cabezas made the statements after their arrest and after they had already denied any knowledge. The statements lacked spontaneity in that the declarants specifically requested to talk with Ibarra to make the statements after all of the co-defendants had been left together in a detention room. Under the circumstances, the trial judge did not abuse his discretion in finding that trustworthiness was not clearly indicated.

### CONCLUSION

The judgment of the district court is AFFIRMED.