**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-2255
_____

UNITED STATES OF AMERICA


v.

VICTOR PATELA


Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(Case No. 11-cr-00491-1)
District Judge: Honorable Noel L. Hillman

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 27, 2014
_____


Before: McKEE, *Chief Judge*, FUENTES and GREENAWAY, JR., *Circuit Judges*

(Filed: September 3, 2014)

_____

OPINION OF THE COURT
_____

FUENTES, Circuit Judge:

A jury found Victor Patela guilty of five offenses relating to a 2004 scheme to fraudulently obtain a $1.9 million loan to purchase two apartment buildings. On appeal, Patela raises three issues and argues that each presents an independent ground to reverse his conviction. First, he argues that the District Court abused its discretion by admitting certain evidence of other acts. Second, he argues that the District Court failed to adequately remedy what the defense identified as "burden shifting" remarks by the prosecution. Third, he argues that the District Court erroneously instructed the jury on willful blindness. Considering each of these issues in turn, we find that the District Court did not abuse its discretion or otherwise err. We therefore affirm.

**I. Facts**

Victor Patela and his friend, Jose Dominguez, sought to purchase two apartment buildings in Elizabeth, New Jersey valued at $1.9 million. Neither Patela, a police officer, nor Dominguez, a bank employee, had much money, so they hatched a plan to purchase the property with "zero money down." App'x 461-62.

The scheme hinged on Dominguez's connection to his employer, Spencer Savings Bank. Knowing that the bank would only agree to eighty percent financing, Dominguez

colluded with the seller to falsely inflate the price of the apartment buildings so that eighty percent of the inflated price covered one hundred percent of the true price.

Next, Dominguez had Patela form a limited liability company called "JVI Realty" and use it to apply for a mortgage loan with Spencer Savings Bank. The two deliberately concealed Dominguez's involvement and financial stake in the deal. As part of the loan application, the bank requested a personal financial statement. Dominguez completed the form for Patela, overstating Patela's assets by millions of dollars and exaggerating his experience as an owner of commercial real estate.

Spencer Savings Bank also demanded "satisfactory evidence . . . as to the source of the $480,000 equity contribution" before it could approve the loan. Supplemental App'x 45. Without any actual assets to speak of, Patela told the bank that he had contracted to sell a piece of property in Newark, NJ and that, when the deal closed, he would use the proceeds from that sale to pay the $480,000. In fact, Patela had already sold the same property in 2003. Nonetheless, Dominguez downloaded a blank real estate contract from the Internet and fabricated proof of the source of the equity contribution. The bank accepted their representations.

Having allayed the bank's concerns about JVI Realty's ability to pay, Patela and Dominguez had to find a way to actually come up with the money. They did so in part by taking out a second mortgage on the apartment buildings. The second mortgage directly violated several clauses in the Spencer Savings Bank loan agreement that forbade further encumbrances on the properties. Unaware of the second mortgage, Spencer Savings Bank approved JVI Realty's application for the $1.9 million loan, and Patela and Dominguez purchased the Elizabeth apartments.

3

In 2008, JVI Realty defaulted on its loan and subsequently filed for bankruptcy in federal court. While reviewing the loan documents, a Spencer Savings Bank officer noticed that the signatures of the two parties to the fake real estate contract looked suspiciously similar to one another. The bank officer confronted Patela, who agreed to surrender the deed to the Elizabeth properties to Spencer Savings Bank in lieu of foreclosure. The bank sold the Elizabeth properties for a loss of more than $450,000.

Federal agents arrested Patela and Dominguez for conspiring to commit bank fraud. Soon thereafter, a federal grand jury returned the indictment charging Patela with bank fraud, in violation of 18 U.S.C. § 1344; loan application fraud, in violation of 18 U.S.C. § 1014; and bank bribery, in violation of 18 U.S.C. § 215(a)(1). Patela pleaded not guilty on all counts and opted for a jury trial. After the six-day trial, the jury returned a verdict of guilty on all counts.

## II. Discussion

On appeal, Patela raises three arguments: (1) the District Court erred in admitting certain character evidence pursuant to Rule 404(b) at trial; (2) the District Court erred by failing to grant a mistrial in response to the "burden-shifting" remarks made by the government during its rebuttal summation; and (3) the District Court erred in charging the jury on willful blindness. For the reasons that follow, we reject each argument.

### A. *Other bad acts evidence*

Patela contends that the District Court erroneously admitted other bad acts evidence against him. The government sought to admit evidence that Patela submitted false information on a 2007 residential loan application and had included false information in

JVI's bankruptcy petition. The District Court held a pretrial hearing to determine whether this evidence was permissible under Rule 404(b) and concluded that it was. Patela objects to this conclusion and further argues that the prejudicial effect of the evidence outweighed any probative value in violation of Rule 403. "We normally review evidentiary rulings for abuse of discretion, but we exercise plenary review over whether evidence falls within the scope of Rule 404(b)." *United States v. Smith*, 725 F.3d 340, 344-45 (3d Cir. 2013) (quotation marks omitted).

"Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). For a court confronted with other bad acts evidence, "[t]he prime inquiry is whether the evidence is probative of a material issue other than character." *United States v. Boone*, 279 F.3d 163, 187 (3d Cir. 2002). Rule 404(b)(2) permits other bad acts evidence when the proponent offers the evidence to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." But "the proponents of Rule 404(b) evidence must do more than conjure up a proper purpose—they must also establish a chain of inferences no link of which is based on a propensity inference." *Smith*, 725 F.3d at 345.

The fact that Patela (1) committed mortgage loan fraud in 2007 and (2) made misrepresentations before the bankruptcy court in 2009 spoke to issues beyond Patela's character. The evidence demonstrated his capacity to knowingly perpetrate fraud without assistance from or manipulation by Dominguez. Moreover, the evidence rebutted Patela's claim of ignorance, and his claim that he lacked the sophistication to defraud Spencer Savings Bank. Patela repeatedly argued that Dominguez alone committed the fraud and

5

that Patela was an innocent dupe. The government presented the other bad acts evidence to cast doubt on those theories. Because other bad acts evidence may be admitted to rebut claims of ignorance, mistake, or lack of intent, such as Patela's, we conclude that the District Court properly admitted the evidence. *See Boone*, 279 F.3d at 187.

Alternatively, Patela argues that the District Court improperly balanced the probative value of the evidence against the risk of jury confusion and prejudice. Rule 403 instructs courts to "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. We review a District Court's Rule 403 decisions for abuse of discretion. *United States v. Universal Rehab. Servs. (PA), Inc.*, 205 F.3d 657, 669 (3d Cir. 2000).

The District Court concluded that the evidence was "important to the Government's proof" to show knowledge and intent, and that its "prejudicial effect or risk of confusion to the jury" was not significant. App'x 150. Given that we allow district courts particularly broad discretion when it comes to this "on-the-spot balancing of probative value and prejudice," we accept the District Court's considered balancing here. *United States v. Finley*, 726 F.3d 483, 491 (3d Cir. 2013) (quoting *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 384 (2008)).

**B. The government's "burden-shifting" remarks**

Next, Patela argues that the District Court erred by failing to grant a mistrial to remedy any prejudicial effect of certain remarks made by the prosecutor during rebuttal

6

summation. As a preliminary matter, the parties disagree about whether Patela properly raised this issue before the District Court and, consequently, whether we must review for plain error. The confusion traces back to defense counsel's objection to the government's summation, which addressed the issue of a mistrial in noncommittal language: "I could be asking for a mistrial . . . and maybe I should have." App'x 1037. We will assume without deciding that Patela did move for a mistrial and, thus, that we review the District Court's denial for abuse of discretion. Applying that standard, we conclude that the District Court acted within its discretion when it denied a mistrial and responded with a curative jury instruction instead.

To determine whether the District Court erred by failing to grant a mistrial, we look to "the scope of the improper comments in the overall trial context, the effect of any curative instructions given, and the strength of the evidence against the defendant." *United States v. Mastrangelo*, 172 F.3d 288, 297 (3d Cir. 1999). "We review a district court's decision not to grant a mistrial on the grounds that the prosecutor made improper remarks in closing argument for abuse of discretion, and, if error is found, we apply harmless error analysis." *United States v. Molina-Guevara*, 96 F.3d 698, 703 (3d Cir. 1996) (citations omitted).

The prosecutor made the first challenged remark in response to defense counsel's summation argument that Patela's 2007 residential mortgage fraud was irrelevant to the charges. He said, "So what does the defendant have to say about that?" App'x 1003. Taken out of context, the question might suggest that Patela owed the jury a response. The District Court, however, determined that the statement was made "in the context of

fair rebuttal." App'x 1034. We agree. The prosecutor's remark introduce his arguments about why the defense's theory of innocent mistake could not be credited. App'x 1003.

The second challenged remark had a similar purpose. The prosecutor said:

> The defendant was under oath during that [JVI Realty] bankruptcy proceeding. Did he mention Jose Dominguez at all? Did he mention him when he said that he took the second mortgage? Of course not. *And that's supposed to be evidence of the defendant's innocence. Right?* That years later in 2009, JVI plummets, falls apart, he files for bankruptcy, and because he identified the prohibited second mortgage on the petition, that that proves that he didn't know anything was wrong with it[?]

App'x 1004 (emphasis added). This statement followed defense counsel's summation, during which she emphasized the fact that Patela was forthcoming about his second mortgage on the apartment buildings during the 2009 bankruptcy proceedings. She said: "If he committed a fraud, and he knew that he couldn't let anyone know because the second mortgage was evidence of that fraud, why would he trade $300,000 to shed light on that fraud?" App'x 987. In other words, if Patela were guilty of fraud, he would not have revealed the unauthorized second mortgage because that violation is part of the fraudulent scheme. We construe the prosecutor's remarks to address this assertion and not to imply that Patela had a burden to prove his innocence.

In any event, the District Court addressed a jury instruction to remedy any confusion generated by the exchange:

> I want to note for you that during the government's rebuttal, the government questioned whether certain evidence highlighted by the defense was, 'supposed to be evidence of the defendant's innocence.' This statement should not be taken by you to suggest that the defendant has any burden to prove his innocence. As I have said, the burden to prove guilt beyond a reasonable doubt stays with the government throughout trial.

App'x 1065. The instruction emphasized that the burden of proof remained on the prosecution, not Patela, therefore eradicating any confusion on the matter.

Considering the context of the remarks, the curative instruction, and the overall strength of the evidence tending toward Patela's conviction, the District Court acted within its discretion when it rejected the mistrial motion.

### C. Willful blindness instruction

Finally, Patela challenges the District Court's decision to instruct the jury on the concept of willful blindness. "We review a district court's determination that the trial evidence justified [a willful blindness] instruction for abuse of discretion." *United States v. Stadtmauer*, 620 F.3d 238, 252 (3d Cir. 2010). "The Government need not present *direct* evidence of conscious avoidance to justify a willful blindness instruction." *Id.* at 259 (emphasis in original). And "assuming there to be sufficient evidence as to both theories, it is not inconsistent for a court to give a charge on both willful blindness and actual knowledge." *United States v. Wert-Ruiz*, 228 F.3d 250, 252 (3d Cir. 2000).

The record developed at trial justified a jury instruction on willful blindness. Patela contended that he had no knowledge of the fraudulent representations made to the bank. At the same time, however, evidence showed that Patela signed certain loan documents that contained false information and that he knew those documents would be submitted to the bank. On the basis of this evidence, the jury could reasonably infer that Patela deliberately failed to review documents in order to distance himself from the fraud.

Even if the District Court had improperly decided to instruct the jury on willful blindness, the error would have been harmless. Where there is substantial evidence

9

supporting a finding of actual knowledge, and "the instruction itself contain[s] the proper legal standard," we find the error harmless. *See, e.g.*, *Stadtmauer*, 620 F.3d at 260 n.26 (quotation marks omitted). That would be the case here. Patela does not directly challenge the sufficiency of the evidence proving his actual knowledge of the fraud, nor do we see any basis for such a challenge.

## III. Conclusion

Having considered each of Patela's arguments, we find that none merit reversal. The District Court correctly ruled to admit the other bad acts evidence, remedied any confusion caused by the government's remarks made during the rebuttal summation, and acted within its discretion when it elected to instruct the jury on willful blindness. Accordingly, we affirm the District Court's judgment.