**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| TRANSBAY AUTO SERVICE, INC., a California corporation, *Plaintiff-Appellee*, v. CHEVRON USA INC., a Delaware corporation, *Defendant-Appellant*. | No. 13-15439 D.C. No. 3:09-cv-04932-SI |
| TRANSBAY AUTO SERVICE, INC., a California corporation, *Plaintiff-Appellee*, v. CHEVRON USA INC., a Delaware corporation, *Defendant-Appellant*. | No. 14-15297 D.C. No. 3:09-cv-04932-SI OPINION |

Appeal from the United States District Court
for the Northern District of California
Susan Illston, Senior District Judge, Presiding

Argued and Submitted
August 10, 2015—San Francisco, California

Filed November 30, 2015

Before: Alex Kozinski and Richard C. Tallman, Circuit Judges, and Lawrence L. Piersol,[*] Senior District Judge.

Opinion by Judge Tallman;
Dissent by Judge Piersol

## SUMMARY[**]

### Rules of Evidence / Hearsay

Reversing the district court's judgment, after a jury trial, in an action under the Petroleum Marketing Practices Act, the panel held that certain evidence was not hearsay and should have been admitted as an adoptive statement.

The district court awarded the plaintiff almost half a million dollars as compensation for overpaying for a gasoline service station. The defendant contended that the station's $2.375 million price tag constituted a "bona fide offer" under the Act.

The panel held that a third-party appraisal of the property that valued it higher than either of the appraisals commissioned by the parties was not hearsay, and should

---

[*] The Honorable Lawrence L. Piersol, Senior United States District Judge for the District of South Dakota, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

have been admitted into evidence as an adoptive statement under Federal Rule of Evidence 801(d)(2)(B). Using the "possession plus" test, the panel held that when a party acts in conformity with the contents of a document—e.g., by giving an independent appraisal to a lender in support of accomplishing its objective to secure a commercial loan—such an action constitutes an adoption of the statements contained therein even if the party never reviewed the document's contents.  The panel further held that such an action constitutes an adoption even if the third party never itself uses or relies on the document.  Where, however, a party forwards a document while acting as a mere messenger, this does not constitute an adoption. The panel reversed the district court's judgment and remanded the case for a new trial.

Dissenting, District Judge Piersol wrote that the possession plus rule had not been adopted in this circuit at the time of trial and should not be applied retroactively.

---

## COUNSEL

David S. Ettinger (argued) and Mitchell C. Tilner, Horvitz & Levy LLP, Encino, California; Robert C. Phelps, Glynn & Finley, LLP, Walnut Creek, California, for Defendant-Appellant.

Samuel T. Rees (argued) and Martin R. Fox, Bleau Fox, Los Angeles, California, for Plaintiff-Appellee.

---

**OPINION**

TALLMAN, Circuit Judge:

The dispute before us stems from the multi-million dollar purchase of a gasoline service station in the West Portal neighborhood of San Francisco. Chevron USA Inc. contends the station's $2.375 million price tag constituted a "bona fide offer" under the Petroleum Marketing Practices Act ("PMPA"). Transbay Auto Service, Inc. rejects this argument and urges us to preserve the jury verdict awarding it almost half a million dollars as compensation for overpaying for the property. We must decide whether the district court erred in excluding at trial a third-party appraisal of the property that valued it significantly higher than either of the appraisals commissioned by the parties. We find this appraisal should have been admitted as an adoptive statement under Federal Rule of Evidence 801(d)(2)(B), and we reverse.

## I

Beginning in the late 1930s, Chevron owned the land located at 301 Claremont Boulevard in San Francisco, California (the "property"). While the oil company initially operated its own Chevron-branded service station there, over the years it leased the service station to independent dealers who continued to operate under the Chevron banner. These independent dealers, known as franchisees, paid rent to Chevron in exchange for the right to operate the service station on the property.

In 2001, Chevron and Transbay—which is solely owned by Mike Tsachres—entered into a service station franchise relationship. At the time they entered into the franchise,

Chevron informed Transbay it intended to sell the property sometime in the near future. In May 2008, Chevron communicated to Transbay its intent to do so. Chevron solicited bids from interested purchasers. Transbay submitted a bid in addition to two other companies. These bids ranged from $1.2 to $1.9 million, with Transbay's $1.8 million bid falling in between.[1] Ultimately, none of these bids resulted in a completed transaction for the disposition of the property. Chevron therefore opted to make what it deemed to be a "bona fide offer" to sell the property to Transbay in accordance with the PMPA. *See* 15 U.S.C. § 2802(b)(3)(D)(iii). "[A] bona fide offer under the PMPA is measured by an objective market standard. To be objectively reasonable, an offer must approach fair market value." *Ellis v. Mobil Oil*, 969 F.2d 784, 787 (9th Cir. 1992) (quotation omitted).

To determine the property's fair market value, Chevron employed Deloitte Financial Advisory Services to conduct an appraisal of the property. After learning that buildings in the West Portal neighborhood are generally restricted to a height limitation of twenty-six feet, Deloitte revised its initial appraisal from $3.24 million to $2.386 million as the property's "highest and best use" for retail or commercial space. In its revised appraisal, Deloitte deemed the property worth $1.5 million if it continued to be operated as a service station (a "going concern" valuation).

After Deloitte issued its revised appraisal, Chevron offered to sell the property to Transbay as a branded station

---

[1] One of the bidding companies, Highland, initially offered $2.5 million for the property. It revised this bid to $1.9 million after an investigation period.

for $2.386 million, or as an unbranded station for a slight haircut at $2.375 million.  On behalf of Transbay, Tsachres accepted the unbranded offer under protest.  In order to fund this purchase, Tsachres sought financing from a bank.  While he faced rejection from almost all of the sixteen lenders he approached, Tsachres obtained some traction with American California Bank.  This bank commissioned Property Sciences Group to appraise the property, which valued it at $2.52 million as a going concern ("PSG Appraisal").  Tsachres acknowledged the PSG Appraisal was conducted "for the purposes of [his] loan application."  And he personally participated in the process by providing financial information and submitting to an interview with PSG's appraiser.  Although American California Bank ultimately declined to extend a loan to Transbay, it provided Tsachres with a copy of the PSG Appraisal.

Transbay then sought financing from California Pacific Bank ("CPB").   CPB's chairman instructed Tsachres, "[w]hatever you have, bring them to me."  The parties dispute whether Tsachres ever looked at the PSG Appraisal.  But there is no dispute that when Tsachres went to the bank to apply for the loan, he provided the chairman with an envelope containing the PSG Appraisal.  According to Tsachres's testimony at trial, the chairman offered to make the loan on the spot without looking at the envelope's contents.  Nevertheless, Tsachres did not obtain the final paperwork approving his $1.782 million loan until three days later.  After purchasing the property from Chevron, Transbay entered into a new partnership with Valero to re-brand the service station.

## II

In 2009, Transbay filed a single cause of action against Chevron for violating the PMPA by failing to make a bona fide offer to sell the property.  The district court denied Chevron's motion for summary judgment.  In doing so, the district court made evidentiary rulings to determine the evidence it could consider in support of each party.  After finding the facts "conflicting as to whether Tsachres read, understood, and acceded to the PSG Appraisal," the district court held:

> For purposes of ruling on this evidentiary objection, the Court need only decide whether there is enough evidence for a jury reasonably to conclude that the plaintiff adopted the statement.  On this record, there is enough such evidence, albeit disputed.  The Court finds that the PSG Appraisal is admissible as an adoptive admission and plaintiff's objections are overruled.

The district court adhered to this ruling during a colloquy regarding the parties' opening arguments when Transbay said it would object to Chevron's introduction of the PSG Appraisal.  Chevron referenced the district court's previous adoptive admission summary judgment ruling, after which the district court stated, "I think that's right."  When Chevron argued that nothing had changed between the summary judgment order and trial, the district court overruled Transbay's objection.  As a result, Chevron discussed the PSG Appraisal during its opening argument to the jury.

Critically—after a mid-trial voir dire of Tsachres outside the presence of the jury—the district court changed its ruling and did not permit Chevron to introduce the PSG Appraisal. During the voir dire, Tsachres testified he never reviewed the PSG Appraisal before giving it to CPB. The district court rejected Chevron's efforts to impeach Tsachres with his deposition testimony:[2] "[T]he only evidence is that he didn't read these materials. . . .  There's no contrary evidence. . . . I don't think the deposition said that he read those materials, if that's what you're saying." The district court consequently deemed the PSG Appraisal inadmissible, ruling that "I just think on the state of this record it doesn't come in as an adoptive admission."

Without the PSG Appraisal, the parties presented the jury with three valuations: (1) Chevron's revised $2.386 million appraisal if the property was operated at its "highest and best use"; (2) Transbay's $1.8 million appraisal—created for litigation purposes—if the property continued to operate as a service station; and (3) Chevron's revised $1.5 million appraisal if the property continued to operate as a service

---

[2] During the voir dire, Chevron read Tsachres's deposition testimony into the record:

> Question: All right. Have you seen this appraisal before, that we've marked as Exhibit 106?

> Answer: As I mentioned earlier, they gave it to me, but this bank when they reject it they give me this package.

> Question: All right.  And so did you see a copy of this appraisal that we've marked as Exhibit 106 prior to when you closed on the deal?

> Answer: Yes.

station.[3]  In addition, Transbay proffered an attorney land use expert who testified that the process to convert the property from a service station to a retail or commercial use would cost approximately $500,000 and take several years due to a specific San Francisco zoning ordinance.[4]  The jury also learned about the various bids submitted on the property.

After a four-day trial, the jury returned a verdict in favor of Transbay and awarded it $495,000 in damages.  Chevron subsequently filed a motion for, among other relief, a new trial based on the district court's exclusion of the PSG Appraisal.  The district court's denial of this motion reiterated its bench order, finding that no evidence "indicated that Mr. Tsachres actually read the contents of the PSG Appraisal." It justified the departure from its earlier admission ruling on the basis that at the summary judgment stage there had not yet been an evidentiary hearing.  The propriety of the district court's denial of Chevron's post-verdict motion is now before us on appeal.

---

[3] The jury also learned about Chevron's initial "highest and best use" appraisal, as well as its initial going concern appraisal.

[4] "No owner of a property used as an Automotive Service Station shall change the use of the property to a different type of use without first applying for and receiving either a Conditional Use authorization from the City Planning Commission, or a conversion determination from the Zoning Administrator.  Such authorizations shall be in addition to any other permit or authorization required for a proposed service station conversion under any applicable City, State or [F]ederal law or regulation."  San Francisco, Cal., S.F. Planning Code § 202.5(c)(1) (2015) (limitation on conversions of automotive service stations) (formerly § 228(c)(1) (2012)).

**III**

"[W]e review de novo the district court's construction of hearsay rules, but review for abuse of discretion the court's determination to admit hearsay evidence." *United States v. Marguet-Pillado*, 560 F.3d 1078, 1081 (9th Cir. 2009). With respect to adoptive admissions, "the district court must first find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually [adopt] the statement." *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985) (addressing adoptive admission by silence). "[I]t's not a question of the court weighing the evidence at this time and deciding whether the showing is strong or weak. The court merely needs to decide that there is a substantial enough showing to present the issue to the jury for them to perform that weighing function." *United States v. Gil*, 58 F.3d 1414, 1420 (9th Cir. 1995) (alteration omitted) (quoting unpublished district court opinion) (admitting drug ledgers found in defendant's possession).

**IV**

As a matter of first impression, we hold that when a party acts in conformity with the contents of a document—e.g., by giving an independent appraisal to a lender in support of accomplishing its objective to secure a commercial loan—such an action constitutes an adoption of the statements contained therein even if the party never reviewed the document's contents. We further hold that such an action constitutes an adoption even if the third-party never itself uses or relies on the document. Where, however, a party forwards a document while acting as a mere messenger, this does not constitute an adoption.

## A

Rule 801(d)(2)(B) dictates that statements adopted by a party-opponent do not constitute hearsay:

> (d) Statements That Are Not Hearsay. A statement that meets the following conditions is not hearsay:

> (2) An Opposing Party's Statement.   The statement is offered against an opposing party and:

> (B) is one the party manifested that it adopted or believed to be true[.]

Fed. R. Evid. 801(d)(2)(B).

We use the "possession plus" test to determine adoption. *See United States v. Pulido-Jacobo*, 377 F.3d 1124, 1132 (10th Cir. 2004) ("[W]e do adopt the 'possession plus' standard articulated by the . . . Ninth Circuit[.]" (citations omitted)).   This standard is derived from our decision in *United States v. Ospina*, 739 F.2d 448 (9th Cir. 1984).   In *Ospina*, as evidence of the defendant's participation in a drug conspiracy, the government sought to introduce two business cards with notations written on the back with the location of the drug transfer and the address of his co-conspirators' hotel. *Id.* at 451.   We held these business cards admissible under Rule 801(d)(2)(B) not only because they were in the defendant's possession, but because "Ospina acted on the information written on the cards when he traveled to the address written there to pick up the cocaine."   *Id.*   We emphasized the significance of the defendant's possession

*plus* his additional act of travel in reliance on the business cards' notations.  *See id.*

While it is well settled there must be evidence of adoption "beyond mere possession," *United States v. Carrillo*, 16 F.3d 1046, 1049 (9th Cir. 1994), we have not yet addressed facts analogous to the situation here where a party acted based on the contents of a document, but without necessarily reviewing the document first.  We and other courts have previously held that a party who relies on a third-party document by submitting the document to another—but after reviewing its contents—constitutes an adoptive admission.  In *Sea-Land Service, Inc. v. Lozen International, LLC*, 285 F.3d 808, 821 (9th Cir. 2002), an employee adopted an internal memorandum that had been e-mailed to her by copying the entire body of the memorandum into her e-mail to another and prefacing it with an inculpatory statement.  Where the inculpatory statement was clearly based on the contents of the memorandum, the employee "incorporated and adopted the contents of [the] original message because her remark manifested an adoption or belief in the truth of the information contained in the original e-mail."  *Id.* (quotation omitted).

One of our sister circuits "ha[s] identified the correct approach where documents are concerned as asking whether the surrounding circumstances tie the possessor and the document together in some meaningful way." *Pilgrim v. Trs. of Tufts Coll.*, 118 F.3d 864, 870 (1st Cir. 1997) (quotation omitted), *abrogated on other grounds by Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).  The First Circuit deemed a grievance committee report adopted where a university president—who had been provided the report by the authoring committee—followed the "serious" action

recommended in the report by removing supervisory duties from an employee's allegedly discriminating boss. *Id.* The president's "acceptance of the contents of the [r]eport and his implementation of its recommendations, without disclaimer, served as an adoption of the [r]eport for the purposes of Rule 801([d])(2)(B)." *Id.* Similarly, in *Grundberg v. Upjohn Co.*, 137 F.R.D. 365, 366 (D. Utah 1991), the defendant corporation manifested an adoption of a study conducted by an affiliated, non-employee doctor by submitting it to the FDA in an effort to obtain approval of a drug. To constitute an adoptive admission, the action that a party takes in conformity with the document need not be serious:

> There is no doubt that where a party's use of a document supplied by another in fact represents the party's intended assertion of the truth of the information therein, an adoptive admission can be found. Situations of this sort are most commonly encountered where the party forwards the document to another in response to some request (or perceived need) for information of the sort contained in the document.

*White Indus., Inc. v. Cessna Aircraft Co.*, 611 F. Supp. 1049, 1062–63 (W.D. Mo. 1985) (citations omitted).

Thus, the only difference between existing case law and the issue before us on appeal is whether the party personally reviewed the third-party content before submitting it to another. We find that this distinction has no import. To illustrate why this distinction is irrelevant, a parallel may be drawn to criminal cases. An individual who submits a false loan application to a bank faces punishment if he was

willfully blind to the falsity of the contents of the application. *See, e.g.*, *United States v. Patela*, 578 F. App'x 139, 144 (3d Cir. 2014) (upholding willful blindness instruction given to jury who convicted the defendant because "the jury could reasonably infer that Patela deliberately failed to review documents in order to distance himself from the fraud"); *United States v. Green*, 648 F.3d 569, 582 (7th Cir. 2011) (holding an "ostrich instruction" appropriate in mortgage fraud and conspiracy case where Green "was aware that his co-defendants had offered to obtain false documents for him and that they had done so for others in the past," "signed blank loan applications," and "never met some of the individuals who he represented on his loan materials would be renting the properties"); *cf. United States v. 3814 NW Thurman St., Portland, Or., A Tract of Real Prop.*, 164 F.3d 1191, 1196 (9th Cir. 1999), *superseded by statute*, 18 U.S.C. § 983(d) (2000) ("The innocent owner defense [to civil forfeiture] does not apply, however, where the owner was willfully blind to false statements made in a loan application."); *United States v. Geisen*, 612 F.3d 471, 475, 488 (6th Cir. 2010) (upholding conviction for making false statements in order to keep a nuclear power station open, and finding willful blindness instruction proper where "the government presented ample evidence from which a rational jury could infer that Geisen deliberately chose not to inform himself in preparing the submissions to the [Nuclear Regulatory Commission]").

Therefore, a party who is only vaguely aware of the contents of a document manifests an intent to adopt these contents by using the document to accomplish an objective or by acting in conformity with the document. *See Grundberg*, 137 F.R.D. at 370 ("Even if the person adopting the statement had no personal knowledge or first hand information about

the reports, if a person manifests their acceptance of information, the admission by adoption is admissible non-hearsay evidence."). The Federal Rules bear out this conclusion: "While knowledge of contents would ordinarily be essential, this is not inevitably so. . . . Adoption or acquiescence may be manifested in any appropriate manner." Fed. R. Evid. 801(d)(2)(B) note. "A party may adopt a written statement if the party uses the statement or takes action in compliance [with] the statement." 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 801.31[3][b] (Joseph M. Laughlin ed., 2d ed. 2002), *cited with approval in Sea-Land Serv.*, 285 F.3d at 821; *see also Grundberg*, 137 F.R.D. at 369 ("An adoptive admission may be oral or written or by conduct."). We therefore embrace the First Circuit's formulation of our "possession plus" standard as it pertains to documents—we do not look to whether the party has affirmatively reviewed the document, but whether "the surrounding circumstances tie the possessor and the document together in some meaningful way." *Pilgrim*, 118 F.3d at 870.

## B

Here, on *de novo* review, we hold the district court applied the incorrect standard. Rather than evaluate Tsachres's actions under the "possession plus" standard, the district court limited the scope of Rule 801(d)(2)(B) to whether the evidence established that Tsachres did "actually hear, understand, and accede to the statement."[5] In doing so,

---

[5] The dissent asserts that we are improperly applying the "new 'possession plus' rule . . . retroactively." Dissent at 20. But the possession plus rule was not suddenly created for this case. As the Tenth Circuit recognized more than ten years ago in *Pulido-Jacobo*, 377 F.3d at

the district court ignored the actions Tsachres took by focusing solely on whether he had read the PSG Appraisal. Although the "hear, understand, and accede" language comes from our oft-cited holding in *Monks*, 774 F.2d at 950, that case is distinguishable because it examined whether the defendant had adopted an oral statement by remaining silent. While *Monks* most certainly fits within our "possession plus" standard, it is less applicable to adoptive admissions of documents.

According to Tsachres's trial testimony, he never opened the envelope containing the PSG Appraisal. Nevertheless, when CPB's chairman called Tsachres and told him "[w]hatever you have, bring them to me," it is uncontradicted that Tsachres knowingly brought the PSG Appraisal to CPB and handed it to the chairman. At this point, Tsachres manifested an intent to adopt the PSG Appraisal. He went to the bank with the hope of inducing it to provide him with a loan. As part of this inducement, he provided CPB with the PSG Appraisal. Tsachres does not know whether CPB relied upon the PSG Appraisal before finalizing the loan three days later. But by providing the PSG Appraisal in a package of materials upon which he knew the bank might rely when deciding whether to make him the loan, he "manifested an adoption or belief in the truth" of the PSG Appraisal. *Sea-Land*, 285 F.3d at 821.

Given his need for the money to buy the property, Tsachres's protest that he was a mere messenger rings hollow. The situation therefore warranted submission of the PSG Appraisal and his testimony to the jury to decide whether his conduct amounted to an adoptive admission of

1132, the rule is derived from our 1984 decision, *Ospina*, 739 F.2d at 451.

the value of the land.  He did not simply deliver information on behalf of another entity.  Instead, he had a vested interest in supplying the PSG Appraisal.  By providing the PSG Appraisal in response to the chairman's directive to bring all supporting documents to the bank, Tsachres acted like the "party [who] forwards the document to another in response to some request (or perceived need) for information of the sort contained in the document."  *White Indus.*, 611 F. Supp. at 1063.

This record provides sufficient foundational facts for a jury to reasonably conclude that Tsachres adopted the valuation contained in the PSG Appraisal.  While the district court may believe that Tsachres did not actually do so, we agree with the dissent that this is a credibility determination with which the jury is tasked, not the judge.  The PSG Appraisal should have been admitted under Rule 801(d)(2)(B).

**V**

The PSG Appraisal—the only third-party appraisal available—values the property higher than any other appraisal and remarkably higher than any other going-concern appraisal.  We cannot say with any degree of confidence that had the jury been presented with the PSG Appraisal, it would have come to the same conclusion.  We therefore conclude the evidentiary error merits a new trial.  Because we order a new trial, we need not reach the second issue raised by Chevron on appeal that Transbay failed to prove its case for damages.

We vacate the district court's Corrected and Consolidated Final Judgment, and reverse and remand the case for a new trial.

Costs are awarded to the Appellant.

**REVERSED, VACATED, and REMANDED.**

PIERSOL, Senior District Judge, dissenting:

I respectfully dissent. It is true that the trial court did not apply the possession plus rule with regard to adopted admissions. That rule was not adopted in the Ninth Circuit until the majority opinion in this decision. At the mid-trial voir dire, the trial judge heard Tsachres' testimony that he never reviewed the PSG Appraisal and found despite his deposition testimony that there was no submissible issue to present to the jury on whether or not the PSG Appraisal was an adoptive admission. Neither the deposition nor the voir dire testimony showed that Tsachres had read or otherwise understood the contents of the PSG Appraisal. The trial court had basis for its conclusion that the rule in the Ninth Circuit required that Tsachres had read or otherwise understood the contents of the PSG Appraisal. *United States v. Orellana-Blanco*, 294 F.3d 1143, 1148, n.10 (9th Cir. 2002) was relied upon by the trial court, with that case quoting *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985) (before letting in evidence as an adoptive admission, "the district court must find that sufficient foundational facts have been introduced for the jury reasonably to conclude that the defendant did actually hear, understand and accede to the statement.") While *Orellana-Blanco* and *Monks* do both involve an oral

statement, the requirement of understanding and acceding is common to oral information as well as written. *See Sea-Land Serv., Inc. v. Lozen Int'l, LLC,* 285 F.3d 808 (9th Cir. 2002) (employee incorporated a memorandum into her own e-mail, thus adopting its contents.)  Here, the most that the record indicates is that Mr. Tsachres saw the PSG Appraisal, that being his deposition testimony, not that he read or understood the appraisal.  His voir dire testimony was that he did not review the PSG Appraisal before giving it in the package he received it in to California Pacific Bank.  What Mr. Tsachres did know was that American California Bank had refused him a loan but did provide him with a copy of the PSG Appraisal.  California Pacific Bank's chairman then told Tsachres, "[w]hatever you, have, bring them to me." and he did.

Since the "possession plus" rule was not applied, it was not an abuse of discretion for the trial court to find that there was no submissible jury question of whether Tsachres understood and acceded to the statements in the PSG Appraisal.  Had the "possession plus" rule been applied at trial, then it would have been an abuse of discretion to not submit the adoptive admission question to the jury pursuant to Federal Rule of Evidence 104.

The majority opinion draws a parallel to criminal cases involving willful blindness to the contents of a document. The willful blindness instruction presents that issue to a jury. The possession plus rule swallows that issue in holding that when a party acts in conformity with the contents of a document, such an action constitutes an adoption of the statements therein even if the party never reviewed the document's contents.

The "possession plus" rule had not been adopted in this circuit at the time of trial. The new "possession plus" rule should not be applied retroactively. *Nunez-Reyes v. Holder*, 646 F.3d 684, 694 (9th Cir. 2011)(*en banc*)(applying *Chevron Oil Co. v. Hudson*, 404 U.S. 97 (1971) for pure prospectivity in a civil case announcing a new rule of law in the circuit with the new rule thus not applied to the pending petition for review).

Accordingly, I respectfully dissent and would affirm.