NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

APR 5 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 20-50245 |
| Plaintiff-Appellee, | D.C. No. 3:19-cr-03623-BLM-DMS-1 |
| v. | |
| BUTA SINGH, | MEMORANDUM* |
| Defendant-Appellant. | |

Appeal from the United States District Court
for the Southern District of California
Dana M. Sabraw, Chief District Judge, Presiding

Argued and Submitted February 14, 2024
Pasadena, California

Before: W. FLETCHER, NGUYEN, and LEE, Circuit Judges.
Dissent by Judge W. FLETCHER.

Buta Singh appeals his misdemeanor conviction following a bench trial for a

violation of 8 U.S.C. § 1325, improper entry by an alien. We have jurisdiction

under 8 U.S.C. § 1291, and we affirm.

1. Singh challenges the trial court's admission of page 3 of what appears to

be an Indian passport that he presented to the Border Patrol agent. We review the

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

interpretation of the Federal Rules of Evidence de novo and the admission of evidence for abuse of discretion. *United States v. Lopez*, 762 F.3d 852, 859 (9th Cir. 2014).

A duplicate of a document "is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." Fed. R. Evid. 1003. Singh argues that the government did not prove the passport's authenticity because the agent did not know how to evaluate an Indian passport's validity. However, the trial court made it clear that it did not consider whether the document was a part of a genuine passport; rather, it limited its consideration to the fact that page 3 of the document, which Singh indisputably had in his possession, contained identifying information about him. Singh does not argue that the information on page 3 was inaccurate. Therefore, the trial court did not abuse its discretion in admitting the duplicate. *See United States v. Childs*, 5 F.3d 1328, 1335 (9th Cir. 1993) (finding that the court did not err in admitting evidence that the defendant alleged could have been altered by law enforcement when there was nothing in the record suggesting alteration).

Singh also argues that because the government argued inferences based on the "passport," the entire document should have been admitted, and not just page 3. Again, the record shows that the trial court's consideration was limited to page 3,

2

and it did not consider the entire document nor any inferences drawn from it.[1]

2. Singh next argues that the trial court improperly considered the information on page 3 as an adoptive admission. When, as here, the alleged admission is a document, we apply the "possession plus" test. *Transbay Auto Serv., Inc. v. Chevron USA Inc.*, 807 F.3d 1113, 1119 (9th Cir. 2015). When a party "acts in conformity with the contents of a document… such an action constitutes an adoption of the statements contained therein." *Id.* at 1118.[2]

The trial court did not abuse its discretion in admitting page 3 as an adoptive admission. Singh possessed the alleged passport, and when he saw the other detainees hand their identification documents to the agent, he too handed over the passport. Singh therefore acted "in conformity with the contents of [the] document" in presenting it as identification. *Id.* at 1118.

3. Singh further argues that the trial court erred in failing to suppress the

---

[1] Singh also claims that the government failed to provide the defense an opportunity to examine the original of the alleged passport. The record does not show the government violated its discovery obligation. Singh does not dispute that the government informed his counsel that the passport had been turned over to Immigration and Customs Enforcement (ICE), and the government assumed that the defense could gain access to the document from ICE. Whether that is true is unclear, but there is no indication that the defense ever tried to do so.

[2] Singh argues that the test this Court should apply is whether the proffered admission was heard, understood, and acceded to by the defendant. *United States v. Monks*, 774 F.2d 945, 950 (9th Cir. 1985). While we find that applying that test would not bring a different result in this case, the possession plus test is applicable on these facts.

evidence of page 3 because he was not advised of his *Miranda* rights. We review the decision to admit a statement allegedly in violation of *Miranda* de novo, but underlying factual findings are reviewed for clear error. *United States v. Narvaez-Gomez*, 489 F.3d 970, 973 (9th Cir. 2007). We consider "whether the detention constituted a permissible *Terry* stop, or something more." *United States v. Cabrera*, 83 F.4th 729, 734 (9th Cir. 2023). Permissible aspects of a *Terry* stop at the border include certain standard questions like place of birth, citizenship, how the detainee crossed into the United States and whether they had permission to do so. *Id.* at 735.

Singh was discovered after Border Patrol agents saw a group of people cross the canal on a raft. The agents discovered Singh hiding in the bushes with another person and handcuffed them in order to escort them to the Border Patrol truck, where the handcuffs were then removed. One of the agents then asked for their documents so that he could determine each person's citizenship. Because this happened at night, in a remote location, and Singh was apprehended with other people, the handcuffing in this context does not turn this relatively brief *Terry* stop at the border into an arrest. *See United States v. Galindo-Gallegos*, 244 F.3d 728, 732 (9th Cir. 2001) (finding that it was not a custodial questioning, but a *Terry* stop, when 15 or 20 suspects were stopped near the border by officers, told to sit on the ground and asked whether they had a legal right to be in the United States,

4

even though they were not free to leave). Thus, the agents did not need to advise Singh of his *Miranda* rights before asking him for identification documents.

4. Finally, even assuming the trial court erred in admitting page 3 of the passport, any error was harmless. The trial court found that the visa application, with the certificate of authenticity, was "sufficient to establish alienage." The visa application had Singh's photo on it, which the trial judge noted was "sufficient to establish that it is the defendant who provided that information." The circumstances of how Singh was found, shortly after entering the United States on a raft and hiding in the bushes, combined with the visa application, are sufficient to establish that Singh was not a citizen. *United States v. Hernandez*, 105 F.3d 1330, 1333 (9th Cir. 1997) (noting that "scaling the border fence" to enter the United States can be "an indication" that a person entered illegally).

**AFFIRMED**.

*United States v. Singh*, No. 20-50245

W. Fletcher, J., dissenting.

I respectfully dissent. Before the Border Patrol agents asked appellant Buta Singh for his passport, they handcuffed him and placed him in the back of their truck. The bed of the truck had been converted into what was, in effect, a small room. It had a door as its only entry and exit. During a deposition, one of the agents agreed with defense counsel's description of the vehicle as a "cell on wheels." The agent also testified that Singh "was under arrest" while he was in the enclosed space on the back of the truck.

Under these circumstances, the Border Patrol agents were required to inform Singh of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), before asking for his passport. This case did not involve the degree of flight risk or dangerousness that allows officers to handcuff suspects or place them in a secure vehicle without converting the encounter from a *Terry* stop into a custodial interrogation. In *United States v. Galindo-Gallegos*, 244 F.3d 728 (9th Cir. 2001), the case upon which the majority relies, we held that it was a *Terry* stop when two agents had "15 to 20 people" who had repeatedly run from them sit handcuffed on the ground during questioning. *Id.* at 729. But in the case before us, Singh never ran from the agents; he was apprehended when he was found in some tall brush and willingly came to an agent who gestured for him to do so. Singh was

handcuffed and placed in the truck with only two other people, barely outnumbering the two arresting agents. Our holding in *Galindo-Gallegos* that a *Terry* stop occurs "[w]here officers apprehend a substantial number of suspects and question them in the open prior to arrest" has little application to the facts here. *See id.* at 732.

I would not find the improper admission of Singh's passport harmless. The magistrate judge concluded that "the information in" the 2014 visa application "as well as the picture" on the application were sufficient to prove Singh's alienage beyond a reasonable doubt. But the only way to connect the information in the visa application to Singh was to cross-check it against the information in the improperly admitted passport. Without the passport, the only evidence of alienage was (1) a photo of Singh taken at least five years before Singh's trial contained in a visa application, and (2) the fact that Singh was found in tall brush after some individuals who had just crossed a narrow canal into the United States were seen entering the same brushy area.

The magistrate judge did not rely on evidence of Singh's alleged mode of entry, and Singh notes that some American citizens regularly make illegal entries into the United States in areas where lawful points of entry are comparatively difficult to access. *See* Lorne Matalon, *In Rural West Texas, Illegal Border*

2

*Crossings Are Routine for U.S. Citizens*, National Public Radio (May 25, 2019), https://www.npr.org/2019/05/25/726128023/in-rural-west-texas-illegal-border-cros sings-are-routine-for-u-s-citizens.  The majority cites *United States v. Hernandez*, 105 F.3d 1330 (9th Cir. 1997), but that case did not even hold that mode of entry evidence alone was sufficient to constitute "some independent corroborating evidence" of a defendant's admission of alienage "such that a rational trier of fact, believing that admission to be true, could rely on that admission as proof that he was an alien."  *Id.* at 1332–33 (quoting *United States v. Lopez-Alvarez*, 970 F.2d 583, 589 (9th Cir. 1992)).  I therefore do not believe we can conclude beyond a reasonable doubt that the improper admission of Singh's passport did not contribute to his verdict.  *See United States v. Williams*, 435 F.3d 1148, 1162 (9th Cir. 2006).